Tamara B. RIDDLEY, Individually and on Behalf of Morgan Tyler Rose Riddley, and the Estate of Marcus Riddley, Deceased, Plaintiffs

v.

WALGREEN COMPANY,
et al., Defendants.

Walgreen Company, Remus Monds and Reginald Mayfield, Third–Party Plaintiffs

v.

Capital Development Company,
Third Party Defendants.

Civil Action No. 3:07CV687TSL–JCS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 7, 2008.

Shunda L. Pounders, Brunini, Grantham, Grower & Hewes, Precious Tyrone Martin, Precious Martin, Sr. and Associates, PLLC, Jackson, MS, Keith D. Obert, Obert Law Group, P.A., Madison, MS, for Plaintiffs.

James Scott Rogers, Scott, Sullivan, Streetman & Fox, PC, Michael J. Tarleton, Ungarino & Eckert, LLC, John A. Waits, Robert S. Addison, Daniel, Coker, Horton & Bell, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of third-party plaintiffs Walgreen Company (Walgreen), Remus Monds and Reginald Mayfield for leave to amend the third-party complaint to add Fireman's Fund Insurance Company (Fireman's Fund) and National Surety Corporation (National Surety) as additional defendants. Third-party defendant Capital Development Company (Capital) has responded in opposition to the motion, and the court, having considered the parties' memoranda of authorities, together with attachments, concludes that the motion is well taken and should be granted. Moreover, because the joinder of National Surety will destroy diversity jurisdiction, inasmuch as Walgreen and National Surety are both Illinois corporations, it follows that the case must be remanded to the Circuit Court of Hinds County from which it was removed.

This third-party action has its genesis in a lawsuit filed by Tamara B. Riddley in the Circuit Court of Hinds County. In November 2006, Riddley filed a wrongful death action against Walgreen, Monds, Mayfield and Pendleton Security Services in the Hinds County Circuit Court arising from the fatal shooting of Marcus Riddley in the parking lot of a Jackson, Mississippi

Walgreen store.[1] The premises where the shooting occurred is owned by third-party defendant Capital, and was leased by Capital to Walgreen. It is undisputed that the lease agreement required Capital to procure a minimum of $1,000,000 of liability insurance coverage for death or bodily accident in any one accident, and that Capital, in fact, procured a $1,000,000 policy from Fireman's Fund, as well as an excess policy from National Surety. The lease also required Capital to have Walgreen listed as an additional insured on its liability policy or policies; but according to Walgreen, this was not done.

Thus, on September 5, 2007, three weeks before the Riddley case was scheduled to be tried in Hinds County Circuit Court, Walgreen filed suit against Capital, and Capital's primary insurer, Fireman's Fund, in the United States District Court for the Northern District of Illinois, seeking a declaratory judgment that it is entitled to a defense and indemnity as an additional insured under Capital's Fireman's Fund policy, and alleging additionally and/or alternatively that Capital breached the lease agreement by failing to include Walgreen as an additional insured. Walgreen alleged additionally that Capital breached the lease agreement by failing to provide security for the parking lot. Jurisdiction over the Illinois federal suit was premised on diversity of citizenship, as the amount in controversy obviously exceeded $75,000, and the parties were of diverse citizenship.[2]

On September 7, 2007, two days after the Illinois action was filed and just three weeks before the trial of the Riddley case was scheduled to begin, Walgreen filed a motion in the Hinds County suit for leave to file a third-party complaint against Capital for indemnity, because, according to Walgreen, Capital had breached its duty under the parties' lease agreement to provide security for the subject parking lot and also was obligated under the lease to indemnify Walgreen for any judgment Riddley might obtain against Walgreen.

Prior to a ruling on that motion, and shortly before the trial date, Walgreen agreed to settle Riddley's claim for an amount in excess of $1,000,000. On the same day the settlement was announced, the state court entered an order allowing Walgreen to file its proposed third-party complaint against Capital. The complaint was filed on October 4, 2007, and, on November 21, 2007, within thirty days of being served with process, Capital filed its notice of removal, asserting federal jurisdiction based on diversity of citizenship.

Following removal, Walgreen filed two separate motions seeking remand. In the first, Walgreen argued that removal was improper for two reasons: first, the notice of removal was untimely under 28 U.S.C. § 1446(b), having been filed more than a year after commencement of the state court suit;[3] and second, the third-party action was not removable because the third-party claim was not "separate and

---

**1.** Monds and Mayfield were manager of the Walgreen where the shooting occurred, and Pendleton Security Services had been hired to provide security at the site.

**2.** Fireman's Fund responded to Walgreen's complaint with its own counterclaim for a declaratory judgment, seeking a determination that Walgreen is not an additional insured under its policy.

**3.** Section 1446(b) provides, in pertinent part:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service of otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

independent" from the main claim, as required by 29 U.S.C. § 1441(c).[4] Walgreen contemporaneously moved to amend its third-party complaint to add as additional third-party defendants Capital's liability insurers, Fireman's Fund (its primary insurer) and National Surety (its excess carrier), and in connection with this motion, Walgreen points out that because National Surety, like Walgreen, is an Illinois corporation, joinder of National Surety as a defendant will destroy diversity so that the case will have to be remanded.

The court first considers the motion to amend.[5] National Surety and third-party plaintiffs point out that Walgreen's lease agreement with Capital required Capital to procure a minimum of $1,000,000 of liability insurance coverage for death or bodily injury in any one accident, to acquire excess coverage if commercially reasonable, and to name Walgreen as an additional insured. They assert that in light of these provisions, the carriers through which Capital secured liability coverage, may be liable for all or part of the liability Walgreen has incurred as a result of Riddley's action against it. Thus, they assert, good cause for the amendment exists because "it will avoid circuity of action and it will eliminate duplication of suits based on the same subject matter—the financial liability owed to Walgreen Co. for all or part of the liability Walgreen Co. incurred relative to the wrongful death claim brought against it by the original plaintiff."

█ Section 1447(e) of Title 28, United States Code, provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy

---

4. Although defendant purported to rely on § 1441(c) as the source of its right to remove, that statute only provides for removal of "a separate and independent claim within the jurisdiction conferred by [28 U.S.C. § 1331]," the statute providing for federal question jurisdiction. Section 1441(c), section does not apply to a removal based on diversity. Thus, if Capital were entitled to remove, an issue which the court ultimately finds it unnecessary to resolve, *see infra* note 5, the source of that right would have to be § 1441(a).

5. If the motion to amend is granted, and the court concludes that it will, the court avoids deciding the more difficult issues presented by plaintiffs' alternative motion to remand, which questions Capital's right to remove in the first place. While the majority of courts hold that the right to remove does not extend to third-party defendants, the Fifth Circuit has recognized an exception to this rule, holding that a third-party defendant can remove a severed claim on the basis of diversity jurisdiction since removal does not deprive the plaintiff of his chosen and appropriate forum. *See Central of Georgia Ry. Co. v. Riegel Textile Corp.*, 426 F.2d 935 (5th Cir.1970). One district court in this circuit has held that the policies which underlie this exception apply equally where there has been a settlement and resulting dismissal of the main claim. *See Johns, Pendleton & Assocs. v. Miranda, War-*

*wick & Milazzo*, 2002 WL 31001838 (E.D.La. Sept. 4, 2002). However, another district court in this circuit, considering same issue, has reached a contrary conclusion. *See ConocoPhillips Co. v. Turner Indus. Group., L.L.C.*, 2006 WL 213956 (S.D.Tex. Jan. 24, 2006). Though the court tends to consider the court's reasoning in *Johns, Pendleton & Associates* to be the more persuasive, there still remains the question whether a removal by a third-party defendant in a case such as this is allowable more than a year after the main claim was commenced. Capital argues that the one-year time limit on diversity removals (28 U.S.C. § 1446(b)) began to run only after it was served with process, because only then was the case "commenced" as to it. *See Braud v. Transport Serv. Co. of Ill.*, 445 F.3d 801, 805 (5th Cir.2006) (holding that under the Class Action Fairness Act, "amendments which add a defendant 'commence' the civil action as to the added party' " and that "the addition of a new defendant 'opens a new window of removal' under 1446(b)"). The Fifth Circuit has not considered this holding in the context of the one-year limit on diversity removals, and in light of the court's conclusion that the amendment should be allowed, this court finds it unnecessary to do so.

subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Accordingly, when the court is faced "with an amended pleading naming a new nondiverse defendant in a removed case, [it] should scrutinize that amendment more closely than an ordinary amendment," [6] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987), and "should consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits," *id.* Such factors include

> the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted.

*Id.* In the court's opinion, these factors do not, singly or in combination, weigh against allowing the proposed amendment.

■ Chief among the bases urged by Capital for rejecting the request to amend is its insistence that plaintiffs are forum shopping and that their "sole purpose" in seeking to amend is to divest this court of diversity jurisdiction. That this is so, Capital submits, is manifest, given that on the very day plaintiffs filed their motion to amend the third-party complaint in this case to add Fireman's Fund and National Surety, Walgreen moved to voluntarily dismiss its complaint against Capital and Fireman's Fund in Illinois. However, it seems apparent to the court that third-party plaintiffs' decision to dismiss the Illi-

nois case and to pursue the indemnity claims against Capital and the insurers in Mississippi was not an effort to avoid this court's jurisdiction, but was instead prompted by Capital's own motion to dismiss the Illinois case for failure to join National Surety, which it claimed in that action was an indispensable party.

The record reflects that in a November 14, 2007 motion to dismiss filed in Walgreen's suit in the Northern District of Illinois, Capital pointed out that Walgreen had successfully filed a third-party action against it in Mississippi state court, and stated that it anticipated that Walgreen "has filed or will file similar third-party complaints." In order to prevent duplicative and piecemeal litigation, which Capital deemed prejudicial to its interests, Capital urged that the Illinois district court should dismiss, not simply stay, the action pursuant to *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (recognizing district courts' discretion to dismiss a declaratory judgment action when a parallel suit not governed by federal law and presenting the same issues is pending in state court). Capital further argued to the Illinois court that dismissal was required under Rules 12(b)(7) and 19, governing joinder of parties, because Walgreen had failed to join an indispensable party whose presence would destroy diversity, namely, National Surety.

For their part, third-party plaintiffs deny they are forum shopping, and instead maintain that they simply desire to have all the necessary parties in one suit, which necessarily requires that this court remand the action to state court, from which it was removed and which was lauded by Capital (to the Illinois district court) as more than capable of determining the dis-

---

**6.** Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend "should be freely given when justice so requires."

pute between the parties. As this explanation is entirely plausible, the court concludes that this factor weighs in favor of allowing the amendment.

The second factor, whether the plaintiffs have been dilatory in seeking the amendment, likewise weighs in favor of allowing the amendment. Third-party plaintiffs explain that they sought leave to amend as promptly as circumstances permitted. Their motion, they point out, was filed within two months of filing the third-party complaint, and within a month of removal and of Capital's motion to dismiss in the Northern District of Illinois, which is when Walgreen first received confirmation that National Surety was, in fact, Capital's excess carrier.[7]

As for third factor, risk of significant injury to plaintiffs if amendment is not allowed, third-party plaintiffs urge that failure to allow the amendment will force them to either litigate similar suits in two different courts, which could prove costly and time-consuming, or to forgo their claims against Fireman's Fund and National Surety altogether. The court agrees that considerations of cost and efficiency militate in favor of not requiring the third-party plaintiffs to prosecute separate actions in two forums seeking the same relief from the same factual scenario.[8] Accordingly, this factor weighs in favor of permitting the amendment.

Finally, the court turns to the fourth factor, "any other factors bearing on the equities." As noted by plaintiffs, Capital argued in its motion to dismiss the Illinois suit that it and National Surety could be prejudiced if National Surety were not joined as a defendant. This "significant risk of practical prejudice" to Capital and National Surety certainly weighs in favor of allowing the amendment.

Having weighed the *Hensgens* factors, the court concludes that the amendment should allowed and thus, that this action should be remanded to the state court.

Based on the foregoing, it is ordered that third-party plaintiffs' motion to amend their complaint is granted and that this action is remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi.

---

7.  According to third-party plaintiffs, they have been aware of National Surety's identity but unsure of its obligation. They note that on September 24, 2007, Walgreen's former counsel requested a copy of any excess insurance policy from Capital's counsel. Walgreen represents that it has not received a copy of the policy post-removal.

8.  The court would note that unless Fireman's Fund voluntarily dismisses its counterclaim in the Illinois action, Walgreen will be required to litigate in at least two jurisdictions.