NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3076
_____

UNITED STATES OF AMERICA

v.

OLAJIDE ABDUL-GANIU,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2:10-cr-16
District Judge: The Honorable David Stewart Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 17, 2012

Before: SCIRICA, AMBRO, and SMITH, *Circuit Judges*

(Filed: May 3, 2012)
_____

OPINION
_____

SMITH, *Circuit Judge*.

A jury convicted Olajide Abdul-Ganiu of possession with the intent to distribute

100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) and

of importing a controlled substance into the United States in violation of 21 U.S.C.

§§ 952(a) and 960(b)(2)(A). This timely appeal followed, challenging both his conviction and his sentence.[1] For the reasons set forth below, we will affirm.

## I.

Abdul-Ganiu challenges the validity of the second search warrant, the execution of which resulted in the seizure of evidence from his North Avenue apartment supportive of his intent to distribute heroin.[2] In his view, the District Court erred because, in concluding that the second search warrant was supported by probable cause, the Court considered the averments of an earlier anticipatory search warrant for an express mail package from India containing 246 grams of heroin in the false bottom of a shirt box that was the subject of a controlled delivery. As a result, Abdul-Ganiu contends that the Court deviated from the well established rule that the probable cause determination must be confined to the four corners of the affidavit in support of the search warrant. Without the averments from the first search warrant, Abdul-Ganiu submits that the affidavit in support of the second search warrant failed to establish that there was a nexus between the controlled delivery and his North Avenue apartment. Furthermore, Abdul-Ganiu asserts that the deficiencies in the second search warrant cannot be remedied by

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] In reviewing the District Court's denial of a motion to suppress, we apply a clear error standard to the District Court's factual findings and conduct plenary review of the District Court's application of law to fact. *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

application of the good faith exception to exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984).

In *United States v. Stearn*, 597 F.3d 540 (3d Cir. 2010), we explained that a magistrate judge may not infer probable cause to search a defendant's residence or property solely because there is evidence that he has committed a crime involving drugs. *Id.* at 559. Rather, we instructed that there must be "some evidence that the home contains contraband linking it to the drug dealer's activities[.]" *Id.* (quoting *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002)). This requirement, we pointed out, moored the inferences of drug dealing "back to the 'practical, common-sense decision, whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). In other words, there must be a nexus between a defendant's drug activity and the place to be searched. The nexus, we noted, may be established by numerous factors, including "a defendant's attempts to evade officers' questions about his address, the conclusions of experienced officers 'regarding where evidence of a crime is likely to be found,'. . . [and] probable cause to arrest the defendant on drug-related charges[.]" *Id.* at 559-60 (footnotes omitted).

The probable cause affidavit in support of the search warrant for the North Avenue apartment did not incorporate the earlier anticipatory search warrant. As a result, the second search warrant does not present a clear picture of Abdul-Ganiu as a drug dealer, as there was only a single controlled delivery without any averment as to the

3

quantity of heroin involved. But the parcel had been opened within minutes of its delivery and Abdul-Ganiu was apprehended carrying the heroin. After being advised of his *Miranda* rights,[3] Abdul-Ganiu became nervous and claimed that he had not violated the law as he ordered clothing from India. He admitted, however, that the parcel was for him and acknowledged receiving other parcels from India. He then denied receiving parcels from India, stated this was his first parcel from India, and said that he had received other packages from China which contained clothes. These averments were sufficient to support an inference that Abdul-Ganiu had been involved in similar drug activity on more than one occasion.

The affidavit also linked Abdul-Ganiu's drug activity with his North Avenue apartment. Abdul-Ganiu identified himself as a Nigerian citizen, but claimed that his brother, a truck driver who was on the road, possessed his immigration documents. He readily consented to a search of his rental vehicle and executed a consent to search form. Abdul-Ganiu's responsiveness to questioning changed, however, when they showed him a piece of mail addressed to him at the North Avenue address. He asserted his brother lived at the address. Although Abdul-Ganiu acknowledged that his immigration documents were located at that apartment, he declined the offer of the agents to accompany him there to retrieve the immigration documents. Instead, Abdul-Ganiu indicated his desire to call his brother and stated that he did not "want security officers going to his residence and angering his brother." The law enforcement agents

---

[3]   *See Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966).

subsequently learned from the rental agent that Abdul-Ganiu had leased the North Avenue apartment and occasionally allowed his brother to stay there. Mail delivered to the North Avenue apartment, however, was addressed only to Abdul-Ganiu. This evasive behavior was sufficient to establish a link between Abdul-Ganiu's drug activity and his North Avenue apartment, which the agents had verified was in fact leased by Abdul-Ganiu. *Stearn*, 597 F.3d at 559-60 (noting that a defendant's attempts to evade officers' questions is one of many factors that "help establish the required nexus between a defendant's drug-dealing activities and his home").

Accordingly, we conclude that the second search warrant for the North Avenue apartment contained sufficient averments to link Abdul-Ganiu's drug activity with his North Avenue apartment. Even if we were to conclude that the averments failed to establish the requisite nexus, we would not set aside the District Court's order denying the motion to suppress. *Leon*'s good faith exception applies, as the law enforcement agents reasonably relied on the issuance by the magistrate judge of the second search warrant. 468 U.S. at 922.

## II.

Abdul-Ganiu asserts that the District Court also erred when it rejected his request to instruct the jury on the applicable five-year mandatory minimum sentence.[4] He

---

[4] "We review a district court's decisions regarding jury instructions for abuse of discretion. We will order a new trial on account of a district court's refusal to give a proposed jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal

acknowledged that existing authority weighs against his argument, for "[i]t is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is because "as a general matter, jurors are not informed of mandatory minimum or maximum sentences, nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense." *Id.* at 586-87.

Abdul-Ganiu contends that the legal landscape has evolved to the point that the general principles noted above are no longer good law. As persuasive authority, Abdul-Ganiu cites a decision from the Eastern District of New York. *United States v. Polizzi*, 549 F. Supp. 2d 308, 405 (E.D.N.Y. 2008), *reversed sub nom. United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009). We are not persuaded, and will heed the Supreme Court's instruction that its "decisions remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252-53 (1998); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("reaffirm[ing] that '[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly

---

to give the instruction was prejudicial to the defendant." *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008) (internal quotation marks and citation omitted).

6

controls, leaving to this Court the prerogative of overruling its own decisions'" (citation omitted)). Abdul-Ganiu is, of course, free to make this argument to the Supreme Court.

**III.**

Abdul-Ganiu argues that his conviction should be set aside as he was deprived of his Sixth Amendment right to a public trial when the District Court held a portion of the voir dire proceedings outside the presence of the public. Because Abdul-Ganiu did not object to the District Court's decision to conduct a portion of the voir dire behind closed doors, our review is for plain error. *United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011). After consideration of the record before us, we conclude that this claim, both factually and legally, is indistinguishable from the claim pressed in *Bansal*. As in *Bansal*, we conclude that the circumstances, given our review for plain error, do not warrant an order setting aside Abdul-Ganiu's conviction.

Abdul-Ganiu also seeks to vacate his conviction on the ground that his Sixth Amendment right to a public trial was violated when the government's case agent approached two individuals seated in the courtroom who were observing the proceeding, and asked them questions about their immigration status. The government's contact, in Abdul-Ganiu's view, intimidated one of the individuals, and resulted in that person choosing not to observe the balance of the proceeding. Abdul-Ganiu timely objected to the government's conduct as an infringement of his Sixth Amendment right to a public trial. Accordingly, our review is plenary. *United States v. Lnu*, 575 F.3d 298, 300 (3d Cir. 2009).

7

The Sixth Amendment guarantees the accused "the right to a . . . public trial[.]" U.S. Const. amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned[.]" *Waller v. Georgia,* 467 U.S. 37, 46 (1984) (internal quotation marks and citation omitted). In *Presley v. Georgia*, __ U.S. __, 130 S. Ct. 721, 725 (2010), the Supreme Court instructed that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials."

Given the circumstances in this case, we conclude that the government's action did not constitute a Sixth Amendment violation. The record establishes that neither member of the public was excluded from observing the proceeding. In fact, the government's inquiries were made while the Court recessed for lunch. When Court resumed, defense counsel raised its concern with the Court. The Court asked what the defense was "seeking as a remedy?" Counsel replied: "Instruction not to do that. I would like to know the purpose of it . . . ." The Court agreed to the request for an instruction, and ordered the government to refrain from contacting any members of the public while they were in the courtroom. Accordingly, we conclude that Abdul-Ganiu was not deprived of his right to a public trial and that the Court fulfilled its obligation "to accommodate public attendance at criminal trials." *Presley,* 130 S. Ct. at 725.

**IV.**

Abdul-Ganiu also challenges the propriety of the District Court's order at sentencing that he surrender his Nigerian passport. We conclude that Abdul-Ganiu lacks

8

standing to contest the District Court's directive as passports are the property of the issuing sovereign, not the holder of the passport. *See* Richard A.C. Alton & Jason Reed Struble, *The Nature of a Passport at the Intersection of Customary International Law and American Judicial Practice*, 16 Ann. Surv. Int'l & Comp. L. 9, 15 (2010); *Cf.* 22 C.F.R. § 51.7 (providing that "[a] passport at all times remains the property of the United States").