# SUPREME COURT OF THE UNITED STATES

## ERIC PRESLEY *v.* GEORGIA

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF GEORGIA

No. 09–5270.    Decided January 19, 2010

PER CURIAM.

After a jury trial in the Superior Court of DeKalb County, Georgia, petitioner Eric Presley was convicted of a cocaine trafficking offense. The conviction was affirmed by the Supreme Court of Georgia. 285 Ga. 270, 674 S. E. 2d 909 (2009). Presley seeks certiorari, claiming his Sixth and Fourteenth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors. The Supreme Court of Georgia's affirmance contravened this Court's clear precedents. Certiorari and petitioner's motion for leave to proceed *in forma pauperis* are now granted, and the judgment is reversed.

Before selecting a jury in Presley's trial, the trial court noticed a lone courtroom observer. *Id.,* at 270–271, 674 S. E. 2d, at 910. The court explained that prospective jurors were about to enter and instructed the man that he was not allowed in the courtroom and had to leave that floor of the courthouse entirely. *Id.,* at 271, 674 S. E. 2d, at 910. The court then questioned the man and learned he was Presley's uncle. *Ibid.* The court reiterated its instruction:

> "'Well, you still can't sit out in the audience with the jurors. You know, most of the afternoon actually we're going to be picking a jury. And we may have a couple of pre-trial matters, so you're welcome to come in after we . . . complete selecting the jury this afternoon. But, otherwise, you would have to leave the

sixth floor, because jurors will be all out in the hall-
way in a few moments. That applies to everybody
who's got a case.'" *Ibid.*

Presley's counsel objected to "'the exclusion of the public
from the courtroom,'" but the court explained, "'[t]here
just isn't space for them to sit in the audience.'" *Ibid.*
When Presley's counsel requested "'some accommoda-
tion,'" the court explained its ruling further:

> "'Well, the uncle can certainly come back in once the
> trial starts. There's no, really no need for the uncle to
> be present during jury selection. . . . [W]e have 42 ju-
> rors coming up. Each of those rows will be occupied
> by jurors. And his uncle cannot sit and intermingle
> with members of the jury panel. But, when the trial
> starts, the opening statements and other matters, he
> can certainly come back into the courtroom.'" *Ibid.*

After Presley was convicted, he moved for a new trial
based on the exclusion of the public from the juror *voir
dire.* At a hearing on the motion, Presley presented evi-
dence showing that 14 prospective jurors could have fit in
the jury box and the remaining 28 could have fit entirely
on one side of the courtroom, leaving adequate room for
the public. App. to Pet. for Cert. E–37, E–41. The trial
court denied the motion, commenting that it preferred to
seat jurors throughout the entirety of the courtroom, and
"it's up to the individual judge to decide . . . what's com-
fortable." *Id.,* E–38. The court continued: "It's totally up
to my discretion whether or not I want family members in
the courtroom to intermingle with the jurors and sit di-
rectly behind the jurors where they might overhear some
inadvertent comment or conversation." *Id.,* at E–42 to E–
43. On appeal, the Court of Appeals of Georgia agreed,
finding "[t]here was no abuse of discretion here, when the
trial court explained the need to exclude spectators at the
voir dire stage of the proceedings and when members of

the public were invited to return afterward." 290 Ga. App. 99, 100–101, 658 S. E. 2d 773, 775 (2008).

The Supreme Court of Georgia granted certiorari and affirmed, with two justices dissenting. After finding "the trial court certainly had an overriding interest in ensuring that potential jurors heard no inherently prejudicial remarks from observers during voir dire," the Supreme Court of Georgia rejected Presley's argument that the trial court was required to consider alternatives to closing the courtroom. 285 Ga., at 272, 273, 674 S. E. 2d, at 911. It noted that "the United States Supreme Court [has] not provide[d] clear guidance regarding whether a court must, sua sponte, advance its own alternatives to [closure]," and the court ruled that "Presley was obliged to present the court with any alternatives that he wished the court to consider." *Id.,* at 273, 674 S. E. 2d, at 911, 912. When no alternatives are offered, it concluded, "there is no abuse of discretion in the court's failure to sua sponte advance its own alternatives." *Id.,* at 274, 674 S. E. 2d, at 912.

This Court's rulings with respect to the public trial right rest upon two different provisions of the Bill of Rights, both applicable to the States via the Due Process Clause of the Fourteenth Amendment. The Sixth Amendment directs, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The Court in *In re Oliver*, 333 U. S. 257, 273 (1948), made it clear that this right extends to the States. The Sixth Amendment right, as the quoted language makes explicit, is the right of the accused.

The Court has further held that the public trial right extends beyond the accused and can be invoked under the First Amendment. *Press-Enterprise Co.* v. *Superior Court of Cal., Riverside Cty.*, 464 U. S. 501 (1984) *(Press-Enterprise I).* This requirement, too, is binding on the States. *Ibid.*

The case now before the Court is brought under the

Sixth Amendment, for it is the accused who invoked his right to a public trial. An initial question is whether the right to a public trial in criminal cases extends to the jury selection phase of trial, and in particular the *voir dire* of prospective jurors. In the First Amendment context that question was answered in *Press-Enterprise I*. *Id.*, at 510. The Court there held that the *voir dire* of prospective jurors must be open to the public under the First Amendment. Later in the same Term as *Press-Enterprise I*, the Court considered a Sixth Amendment case concerning whether the public trial right extends to a pretrial hearing on a motion to suppress certain evidence. *Waller* v. *Georgia*, 467 U. S. 39 (1984). The *Waller* Court relied heavily upon *Press-Enterprise I* in finding that the Sixth Amendment right to a public trial extends beyond the actual proof at trial. It ruled that the pretrial suppression hearing must be open to the public because "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." 467 U. S., at 46.

While *Press-Enterprise I* was heavily relied upon in *Waller*, the jury selection issue in the former case was resolved under the First, not the Sixth, Amendment. *Press-Enterprise I*, *supra*, at 516 (STEVENS, J., concurring) ("The constitutional protection for the right of access that the Court upholds today is found in the First Amendment, rather than the public trial provision of the Sixth" (footnote omitted)). In the instant case, the question then arises whether it is so well settled that the Sixth Amendment right extends to jury *voir dire* that this Court may proceed by summary disposition.

The point is well settled under *Press-Enterprise I* and *Waller*. The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is not necessary here to speculate whether or

in what circumstances the reach or protections of one might be greater than the other. Still, there is no legitimate reason, at least in the context of juror selection proceedings, to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has. "Our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant." *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 380 (1979). There could be no explanation for barring the accused from raising a constitutional right that is unmistakably for his or her benefit. That rationale suffices to resolve the instant matter. The Supreme Court of Georgia was correct in assuming that the Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors.

While the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule. "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller,* 467 U. S*.,* at 45. "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Ibid. Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.,* at 48.

In upholding exclusion of the public at juror *voir dire* in the instant case, the Supreme Court of Georgia concluded,

despite our explicit statements to the contrary, that trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives. While the Supreme Court of Georgia concluded this was an open question under this Court's precedents, the statement in *Waller* that "the trial court must consider reasonable alternatives to closing the proceeding" settles the point. *Ibid.* If that statement leaves any room for doubt, the Court was more explicit in *Press-Enterprise I:*

> "Even with findings adequate to support closure, the trial court's orders denying access to *voir dire* testimony failed to consider whether alternatives were available to protect the interests of the prospective jurors that the trial court's orders sought to guard. Absent consideration of alternatives to closure, the trial court could not constitutionally close the *voir dire.*" 464 U. S*.,* at 511.

The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from this Court's precedents but also from the premise that "[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system." *Id.,* at 505. The public has a right to be present whether or not any party has asserted the right. In *Press-Enterprise I*, for instance, neither the defendant nor the prosecution requested an open courtroom during juror *voir dire* proceedings; in fact, both specifically argued in favor of keeping the transcript of the proceedings confidential. *Id.,* at 503–504. The Court, nonetheless, found it was error to close the courtroom. *Id.,* at 513.

Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. Nothing in the record shows that the trial court could not have accommodated the public at Presley's trial.

Without knowing the precise circumstances, some possibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members.

Petitioner also argues that, apart from failing to consider alternatives to closure, the trial court erred because it did not even identify any overriding interest likely to be prejudiced absent the closure of *voir dire*. There is some merit to this complaint. The generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant's constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course. As noted in the dissent below, "the majority's reasoning permits the closure of voir dire in *every criminal case* conducted in this courtroom whenever the trial judge decides, for whatever reason, that he or she would prefer to fill the courtroom with potential jurors rather than spectators." 285 Ga., at 276, 674 S. E. 2d, at 913 (opinion of Sears, C. J.).

There are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing *voir dire*. But in those cases, the particular interest, and threat to that interest, must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I, supra,* at 510; see also *Press-Enterprise Co.* v. *Superior Court of Cal., County of Riverside*, 478 U. S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]").

Per Curiam

We need not rule on this second claim of error, because even assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide.

The Supreme Court of Georgia's judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## ERIC PRESLEY *v.* GEORGIA

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF GEORGIA

No. 09–5270.    Decided January 19, 2010

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

Today the Court summarily disposes of two important questions it left unanswered 25 years ago in *Waller* v. *Georgia*, 467 U. S. 39 (1984), and *Press-Enterprise Co.* v. *Superior Court of Cal., Riverside Cty.*, 464 U. S. 501 (1984) *(Press-Enterprise I)*.    I respectfully dissent from the Court's summary disposition of these important questions.

First, the Court addresses "whether it is so well settled that [a defendant's] Sixth Amendment right" to a public trial "extends to jury *voir dire* that this Court may proceed by summary disposition." *Ante*, at 4.  The Court's affirmative answer to this question relies exclusively on *Waller* and *Press-Enterprise I;* but those cases cannot bear the weight of this answer.

The Court correctly notes that *Waller* answers whether a "defendant's Sixth Amendment right to a public trial applies to a suppression hearing" (not to jury *voir dire*), 467 U. S., at 43, and that *Press-Enterprise I* interprets the *public's* First Amendment right to attend jury *voir dire*, 464 U. S., at 509, n. 8, so neither *Waller* nor *Press-Enterprise I* expressly answers the question here, see *ante*, at 4.  That acknowledgment should have eliminated any basis for disposing of this case summarily; the Court should reserve that procedural option for cases that our precedents govern squarely and directly. See, *e.g.*, *United States* v. *Haley*, 358 U. S. 644 (1959) *(per curiam)* (summarily reversing a federal court's judgment that refused to follow, or even mention, one of our precedents upholding

the statute in issue under identical circumstances).

The Court nevertheless concludes that *Waller* and *Press-Enterprise I*—in combination—"well settl[e]" the "point." *Ante*, at 4. It admits that "[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question," but, apparently extrapolating from *Press-Enterprise I*, asserts that "there is no legitimate reason, at least in the context of juror selection proceedings, to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has." *Ante*, at 4–5. But this conclusion decides by implication an unstated premise: that jury *voir dire* is part of the "public trial" that the Sixth Amendment guarantees. As JUSTICE STEVENS recognized in *Press-Enterprise I*, that case did not decide this issue. See 464 U. S., at 516 (concurring opinion) ("If the defendant had advanced a claim that his Sixth Amendment right to a public trial was violated by the closure of the *voir dire*, it would be important to determine whether the selection of the jury was a part of the 'trial' within the meaning of that Amendment"). Until today, that question remained open; the majority certainly cites no other case from this Court answering it. Yet the Court does so here—even though the Supreme Court of Georgia did not meaningfully consider that question, and petitioner does not ask us to do so.\* I am unwill-

—————

\* In full, petitioner's two questions presented state:

"I. This Court has established that the public cannot be expelled from a courtroom unless the presence of the public creates a 'substantial probability' of prejudice to an 'overriding interest.' But is some case-specific evidence required to meet this 'substantial probability' test, or can generalized fears that would apply equally to nearly every trial suffice?

"II. This Court has repeatedly held that a trial court must consider reasonable alternatives to closing a proceeding before it can exclude the public. But who bears the burden of suggesting such alternatives? Must the proponent of closure establish that closure is necessary, in that there are no reasonable alternatives available? Or to overcome a

ing to decide this important question summarily without the benefit of full briefing and argument.

Second, I am also unwilling to join the Court in reading the "'alternatives to closure'" language it quotes from *Waller* and *Press Enterprise I* as squarely foreclosing the decision of the Supreme Court of Georgia. See *ante*, at 6. The Court chides the Supreme Court of Georgia for "conclud[ing], despite *our explicit statements* to the contrary, that trial courts need not consider alternatives to closure *absent an opposing party's proffer of some alternatives*." *Ante*, at 5–6 (emphasis added). But neither *Waller* nor *Press-Enterprise I* expressly holds that jury *voir dire* is covered by the Sixth Amendment's "[P]ublic [T]rial" Clause. Accordingly, it is not obvious that the "alternatives to closure" language in those opinions governs this case.

Even assuming the Court correctly extends *Waller* and *Press-Enterprise I* to this (Sixth Amendment *voir dire*) context, neither opinion "explicit[ly]" places on trial courts the burden of *sua sponte* suggesting alternatives to closure "absent an opposing party's proffer of some alternatives." *Ante,* at 6. The statement that a "'trial court must consider reasonable alternatives to closing the proceeding,'" *ibid.* (quoting *Waller, supra,* at 48), does not definitively establish who must *suggest* alternatives to closure that the trial court must then *consider*, nor does it expressly address whether the trial court must suggest such alternatives in the absence of a proffer. I concede that the language can easily be read to imply the latter, and the Court may well be right that a trial court violates the Sixth Amendment if it closes the courtroom without *sua sponte* considering reasonable alternatives to closure. But I would not decide the issue summarily, and certainly would

————————

closure motion must an opponent of closure establish that reasonable alternatives do exist?" Pet. for Cert. i.

not declare, as the Court does, that *Waller* and *Press-Enterprise I* "settl[e] the point" without "leav[ing] any room for doubt." *Ante*, at 6.

Besides departing from the standards that should govern summary dispositions, today's decision belittles the efforts of our judicial colleagues who have struggled with these issues in attempting to interpret and apply the same opinions upon which the Court so confidently relies today. See, *e.g., Ayala* v. *Speckard*, 131 F. 3d 62, 70–72 (CA2 1997) (en banc), cert. denied, 524 U. S. 958 (1998); 131 F. 3d, at 74–75 (Walker, J., concurring); *id.*, at 77–80 (Parker, J., dissenting). The Court's decision will also surely surprise petitioner, who did not seek summary reversal based on the allegedly incorrect application of this Court's well-established precedents by the Supreme Court of Georgia, but instead asked us to "resolve this split of authority" over whether "the opponent of closure must suggest alternatives to closure" or whether "those seeking to exclude the public must show that there is no available less-intrusive alternative." Pet. for Cert. 18.