GRIFFIN, Circuit Judge,
concurring in the judgment.
CONCURRING IN THE JUDGMENT
In the seminal case In re Oliver, the Supreme Court granted a petition for a writ of habeas corpus and held that the' Sixth Amendment’s guarantee of the right to a public trial applied to the states through the Due Process Clause of the Fourteenth Amendment. 333 U.S. 257, 273, 278, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In doing so, the Court traced the history of the Sixth Amendment’s public trial guarantee:
This nation’s accepted practice of guaranteeing a public trial to an accused has its roots in our English common law heritage. The exact date of its origin is obscure, but it likely evolved long before the settlement of our land as an accompaniment of the ancient institution of jury trial. In this country the guarantee to an accused of the right to a public trial first appeared in a state constitution in 1776. Following the ratification in 1791 of the Federal Constitution’s Sixth Amendment, which commands that “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * * ” most of the original states and those subsequently admitted to the Union adopted similar constitutional provisions. Today almost without exception every state by constitution, statute, or judicial decision, re *406 quires that all criminal trials be open to the public.
Id. at 266-68, 68 S.Ct. 499 (footnotes omitted).
Writing for the Court,. Justice Black elaborated on the reasons for, and importance of, the right to a public trial:
The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy’s abuse of the lettre de cachet. All of these institutions obviously symbolized a menace to liberty. In the hands of despotic groups each of them had become an instrument for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial. Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.
Id. at 268-70, 68 S.Ct. 499 (footnotes omitted).
In the present ease, Ohio death-row inmate John Drummond petitions for the Great Writ of Habeas Corpus[1] on the grounds his fundamental and paramount right to a public trial was violated. For the reasons stated in our previous opinion, Drummond v. Houk, 728 F.3d 520 (6th Cir.2013), vacated and remanded sub nom. Robinson v. Drummond, — U.S. -, 134 S.Ct. 1934, 188 L.Ed.2d 957 (2014), he is correct in his claim of error. During Drummond’s trial, the state judge summarily ordered a portion of Drummond’s trial closed to the public. In doing so, the. trial judge failed to consider any alternatives to the public closure and neglected to acknowledge or apply the factors required by the holding of Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).
In a 4-3 decision, the Supreme Court of Ohio rejected Drummond’s Sixth Amendment claim and affirmed his convictions and death sentence. The three dissenting Justices would have reversed on the grounds that Drummond’s structural right to a public trial was violated. In dissent, Chief Justice Moyer, joined by Justices Pfeifer and O’Donnell, wrote in pertinent part:
As to the first Waller factor, there is little evidence that courtroom security and witness safety justified closing the courtroom on February 4.
=:= * *
As to the second Waller factor, the majority emphasizes that closure was no broader than necessary because the courtroom was closed only during the testimony of Thomas and Morris, and Rozenblad’s cross-examination. However, Thomas, Morris, and Rozenblad were key prosecution witnesses, and their testimony was crucial in securing Drum-mond’s conviction.
Drummond’s family members were not allowed to remain in the courtroom dur *407 ing closure. Defense counsel requested that Drummond’s family members be allowed to remain in court to provide support for the defendant. Despite this request, the trial court expelled from the courtroom all spectators except for news reporters. The Supreme Court of the United States has specifically emphasized the importance of allowing members of a defendant’s family to remain in court. See In re Oliver (1948), 333 U.S. 257, 272, 68 S.Ct. 499, 92 L.Ed. 682; see, also, State v. Washington (2001), 142 Ohio App.3d 268, 272, 755 N.E.2d 422 (“The state bears a heavy burden when seeking to exclude relatives of a defendant from trial”). The record provides no justification for excluding family members from the courtroom. No evidence was presented showing that any family members posed a risk of disturbing the court or threatening any of the witnesses or jurors.
* * *
Third, nothing in the record shows that the trial court considered other reasonable alternatives to closing the courtroom, as Waller requires.
Fourth, regarding the final Waller factor, the trial court failed to make findings adequate to support the courtroom closure.
Here, the record contains little information to aid a reviewing court in determining whether the trial court’s order was reasonable and necessary.... These matters may have been considered by the court during a sidebar discussion, but no such discussions were included in the record, as Waller requires.
Key prosecution testimony was presented while the courtroom was closed. Thus, the trial court erred by failing to make specific findings before closing the courtroom.
I would reverse Drummond’s convictions and death sentence because Drummond was denied his Sixth Amendment right to a public trial.
State v. Drummond, 111 Ohio St.3d 14, 854 N.E.2d 1038, 1078-80 (2006). Although the four-Justice majority of the Supreme Court of Ohio disagreed with Chief Justice Moyer, the position taken by the majority was inconsistent with Waller for the reasons stated in our prior opinion.
In this regard, Drummond’s case is similar to, but more egregious than, Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (per curiam). In Presley, the Supreme Court granted a writ of habeas corpus on the basis that petitioner Presley’s Sixth Amendment right to a public trial was unreasonably violated because a Georgia state trial judge ordered the voir dire jury selection portion of Presley’s trial closed to the public. Id. at 216, 130 S.Ct. 721. In Presley, the “lone courtroom observer” — Presley’s uncle — was ordered out of the courtroom. Id. at 209, 130 S.Ct. 721.
Significantly, the Presley Court reiterated that the First Amendment right of the press to observe criminal trials was previously decided in Press-Enterprise Co. v. Superior Court of California, Riverside County, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), and not an issue in Presley, 558 U.S. at 212, 130 S.Ct. 721. Furthermore, the Court noted that although the First Amendment right of the press to cover criminal trials overlaps with the Sixth Amendment right of the public to attend, “[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is *408 not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other.” Id. at 213, 130 S.Ct. 721. Thus, the Supreme Court viewed press and public spectators differently.
In the present case, had the trial judge excluded both press and public spectators, we would likely be addressing not only a Sixth Amendment claim under Waller, but also a First Amendment challenge applying Press-Enterprise.
The Warden attempts to justify the public trial deprivation and Waller violation on the grounds that the trial closure at issue was a “partial” public closure, only, rather than a complete public closure. The Warden relies on Woods v. Kuhlmann, 977 F.2d 74 (2d Cir.1992), Nieto v. Sullivan, 879 F.2d 743 (10th Cir.1989), and Douglas v. Wainwright, 739 F.2d 531 (11th Cir.1984), for the proposition that partial closures are governed by a modified Waller standard.
First, the Supreme Court has never recognized the partial-versus-total closure distinction. In my view, the holding of Waller applies to both. See generally Johnson v. Sherry, 586 F.3d 439, 443-44 (6th Cir.2009). Second, should such a dichotomy exist, the present case involves a total closure to the public, not a partial closure. Only members of the press were allowed to enter Drummond’s closed courtroom. Moreover, in none of the “partial” closure cases relied upon were all members of the public excluded from the trial. Rather, in all cases, some members of the public, along with the press, were permitted to view the trial. See Woods, 977 F.2d at 76 (excluding only defendant’s relatives for testimony of one witness); Nieto, 879 F.2d at 753 (same); Douglas, 739 F.2d at 532 (family members of defendant, a witness, and decedent remained during closure).
Finally, even if a modified Waller test applied, the state trial judge failed to apply it and, for the reasons stated in our previous opinion, the attempt by the four-Justice majority of the Supreme Court of Ohio to reconcile a modified Waller analysis with what occurred in the trial was erroneous.
Nonetheless, by application of the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), 28 U.S.C. § 2254, Drummond is entitled to habeas relief for his constitutional violation only if the decision of the Supreme Court of Ohio was “objectively unreasonable.” Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
This case is close to an “extreme malfunction!; ]” in the state criminal justice system, Harrington v. Richter, 562 U.S. 86, 102-03, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), for which habeas relief is mandated. Indeed, the merits of Drummond’s claim of Sixth Amendment error were recognized by three Justices of the Supreme Court of Ohio, United States District Judge Sara E. Lioi in granting the petition for habeas, and the majority of our court in affirming the district court.
However, following our decision, on petition by the Warden for a writ of certiorari, the Supreme Court vacated our judgment and remanded “for further consideration in light of White v. Woodall,” — U.S. -, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014). In that case, our court held that it was clearly established federal law as determined by the holdings of the Supreme Court that the Fifth Amendment privilege against self-incrimination applied to the penalty phase of a death penalty case and thus the petitioner was entitled to a no-adverse-inference instruction at the penalty phase of his trial. Woodall v. Simpson, 685 F.3d 574, 581 (6th Cir.2012). In so holding and granting the habeas petition, we drew the *409 logical inference which follows from the holdings of Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) and Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In his dissent in White, Justice Breyer (joined by Justices Ginsberg and Sotomayor) agreed and asserted that AEDPA does not prohibit the logical inference that follows from combining the holdings of the Supreme Court decisions. 134 S.Ct. at 1707-10 (Breyer, J., dissenting). As noted by Justice Breyer, the holding of White appears to be that the previously accepted holdings of Carter and Estelle contain exceptions which he and our court failed to recognize.
In the present case, however, the refinement of the holdings of Carter v. Kentucky and Estelle v. Smith is not at issue. Accordingly, we must assume that the remand in the present case was directed at the AEDPA standard of review language contained within the majority opinion. That language, and the Court’s later admonition in Woods v. Donald, — U.S. -, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015), is recited in our recent en banc decision, Hill v. Curtin, 792 F.3d 670 (6th Cir.2015).
In light of AEDPA’s considerable restrictions of federal court review of state court judgments, and the decision by the Supreme Court to vacate our previous judgment, we are compelled to reverse the district court and deny Drummond’s petition for a writ of habeas corpus. The judgment of the Supreme Court of Ohio was erroneous, but not objectively unreasonable, i.e. not “beyond any possibility for fairminded disagreement.” Harrington, 562 U.S. at 103, 131 S.Ct. 770. Drum-mond’s habeas relief, if any, lies not with our court, but with the Supreme Court.

. The framers of our Constitution acknowledged the fundamental importance of the Great Writ when they provided in Article 1, Section 9: "The Privilege of the Writ of Habe-as Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."