TORRUELLA, Circuit Judge,
concurring.
Sixth Amendment claim, the majority explains that there was no error under Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), as these proceedings were tantamount to a sidebar. In this way, the majority has effectively written closure out of this case. But to characterize this event as anything other than a closure is to ignore the egregious facts at issue: whereas a sidebar is held in open court, where all the public can observe (even if they cannot.hear) the proceedings, here, the most critical portion of voir dire was held behind closed doors.[2]
This reasoning is a far cry from Owens v. United States, 483 F.3d 48 (1st Cir.2007), where we discussed the central importance of the public trial guarantee. In Owens, the courtroom had been “closed to the public for an entire day” of jury selection due to space constraints. Id. at 64. We found that the denial of a public trial is a structural error, a “basic protection[] whose precise effects are unmeasurable, but without which a criminal trial cannot reliably function.” Id. (quoting Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). As a result, a defendant denied a public trial need not show prejudice for procedurally defaulting his claim. Id. at 66; see also United States v. Negrón-Sostre, 790 F.3d 295, 305-06 (1st Cir.2015). We did not cabin the structural error analysis to complete closures, instead speaking broadly of the importance of the Sixth Amendment right to a public trial. Owens, 483 F.3d at 65-66 (“[B'Jecause denial of a public trial is structural error, it would be impossible for Owens to establish actual prejudice, arid as such, it must be presumed.”). Later, in Bucci v. United States, this Court did not reach the question of whether “a partial public trial violation ... constitutes structural error.” 662 F.3d 18, 29 (1st Cir.2011). Now, by effectively finding that the procedure here did hot qualify as a closure, the majority has further undercut the Sixth Amendment guarantee to a public trial and chipped away at the constitutional protections articulated in Owens.
To be sure, the majority is correct that Wilder must show that his counsel’s per *662 formance was objectively unreasonable under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to demonstrate cause for his procedural default. Owens, 483 F.3d at 64. Further, I agree that Wilder cannot make that showing here, and I therefore concur in judgment.[3] But, even if this Court were to accept Bucci’s suggestion that a partial closure is not structural error, Wilder has demonstrated that this was a full closure for which there was no “overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve thát interest.” Id. at 61-62 (quoting Press-Enter. Co. v. Superior Court of Cal., 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). Accordingly, he need not show prejudice. Id. at 66.
Judge O’Toole began jury selection by addressing the venire in open court and asking them a series of general yes or no questions. Judge O’Toole stated that he would follow up later with private questions for those who answered affirmatively to his initial inquiries. When all the jurors responded that they were regular users of the internet, Judge O’Toole explained that he would need to speak to everyone in private. Judge O’Toole and the attorneys proceeded to the private jury deliberation room, and defense counsel advised Wilder to wait in the empty courtroom with his family. Throughout the morning and for a portion of the afternoon session, Judge O’Toole questioned forty-eight jurors, one by one, in the private room. Neither Wilder nor any other members of the public observed the private questioning; only Judge O’Toole, the lawyers, and the single prospective juror being questioned were present.
The majority explains, “[t]he only difference between these procedures and a sidebar conference was that members of the public could not observe the individual *663 questioning from their seats in the spectator gallery and attempt to discern facial expressions or body language.” Wilder v. United States, 806 F.3d 653, 660 (1st Cir.2015). This explanation understates the importance of such observations: during a sidebar, even though the jurors’ responses are not audible to the public, the prospective jurors still respond to the judge’s queries in an open courtroom, and their physical reactions to any questions are visible to observers. The presumed openness of holding proceedings in the courtroom is absent when questioning instead takes place behind closed doors. See Press-Enter. Co., 464 U.S. at 507-08, 104 S.Ct. 819 (discussing the historical importance of the “open process” in the legal system, which gives “assurance to those not attending trials that others were able to observe the proceedings and enhanced public confidence”); Owens, 483 F.3d at 65 (“Judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.” (quoting Estes v. Texas, 381 U.S. 532, 588, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965))).[4]
The Supreme Court recognized that a complete closure may be justified where the following four requirements are satisfied:
the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In an affidavit submitted for the § 2255 hearing, Judge O’Toole explained that he preferred to conduct questioning of personal matters such as child or sexual abuse in a private room. I do not foreclose that such concerns may justify a full closure, see Press-Enter. Co., 464 U.S. at 511-12, 104 S.Ct. 819 (noting that questioning regarding “deeply personal matters” may justify complete closure), but the record does not demonstrate that Judge O’Toole considered reasonable alternatives, see, e.g., id. at 512, 104 S.Ct. 819 (recommending that trial judges “requir[e] the prospective juror to make an affirmative request ... [where] disclosure infringes a significant interest in privacy”), as Waller requires. Moreover, Judge O’Toole’s post-hoc justifications should not excuse the closure; such findings must be made during jury selection. Presley v. Georgia, 558 U.S. 209, 213, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (“Waller provided standards for courts to apply before excluding the public from any stage of a criminal trial....”); United States v. Gupta, 699 F.3d 682, 687 (2d Cir.2012) (refusing to consider a later- *664 filed affidavit “because the court made no explicit findings before closing the courtroom” (emphasis in original)); see also Owens, 483 F.3d at 62 (“[A] court must consider '(and reject) alternatives to closure before barring public access.”).
The government contends that the closure was only partial, noting that the initial general questions to prospective jurors and subsequent peremptory challenges were open to the public; that the courtroom remained open throughout the jury selection process; and that Wilder and the public could observe the venire as they proceeded from the courtroom to the jury room and, again, upon their return. But this argument misses the point: the public was excluded from the most critical components of the jury selection process. During the private questioning, prospective jurors were asked about their feelings on child pornography and how they would respond to graphic images, among other things. These queries directly concerned the jurors’ abilities to set aside their biases and return a fair verdict, inquiries central to the fairness of Wilder’s trial. If the Sixth Amendment right to a public trial protects anything, it must protect access to the most substantive components of the trial. Cf. Waller, 467 U.S. at 46, 104 S.Ct. 2210 (explaining that the Sixth Amendment right to a public trial extended to a suppression hearing, noting that such “hearings often are as important as the trial itself’); Owens, 483 F.3d at 63 (finding that courtroom closure was not trivial as “Ijjury selection is ... a crucial part of any criminal case”). To hold otherwise is to reduce the Constitution’s fair trial guarantees to mere formalities.

. I note that the jury deliberation rooms in the Moakley Courthouse are positioned to the rear of the courtrooms and are therefore only accessible by a key card.

. I make this determination based on Judge Casper's finding that defense counsel had informed Judge O'Toole that Wilder did not wish to be present in the jury room. After an evidentiary hearing, Judge Casper credited the prosecutor’s testimony that Wilder's counsel had done so, explaining that this testimony was not inconsistent with • defense counsel's recollection that he typically advised defendants that jurors would be more candid during voir dire if the defendant were not present. Such a factual finding is reviewed for clear error, Owens, 483 F.3d at 57, and Judge Casper's determination, made after reviewing affidavits and observing a comprehensive evi-dentiary hearing, is not clearly erroneous. Nevertheless, I am troubled that there is no indication of Wilder’s waiver on the record. See Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) ("There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' ” (internal citations omitted)).
Further, I dispute the majority’s suggestion that defense counsel's ignorance of the law is irrelevant to the ineffective counsel inquiry for purposes of the Sixth Amendment analysis. See Bullock v. Carver, 297 F.3d 1036, 1049 (10th Cir.2002) ("An attorney’s demonstrated ignorance of law directly relevant to a decision will eliminate Strickland's presumption that the decision was objectively reasonable because it might have been made for strategic purposes...."). That said, defense counsel explained that he thought that jurors would give more candid responses in the defendant's absence and that "it was awkward for jurors to face the defendant at such a small, confined space." This strategic decision is not objectively unreasonable and could have been made by an attorney fully informed of the law. See Horton v. Allen, 370 F.3d 75, 83-84 (1st Cir.2004) ("Defense counsel’s decision to agree to a closed individual voir dire was an objectively reasonable strategy designed to elicit forthcoming responses from the jurors...."); Bullock, 297 F.3d at 1053-54 (finding that a determination made when an attorney was ignorant of the applicable law could have been made by "a fully informed attorney” and, thus, "was not objectively unreasonable”).

. The majority does not reach the merits of Wilder’s Fifth Amendment claim in light of his procedural default. While I agree that his Fifth Amendment claim was procedurally defaulted as well, I note that any similarities between a sidebar and the procedure here are further minimized with respect to Wilder’s right to be present during trial. During a sidebar, the defendant typically is seated in the courtroom, only feet away from where the questioning is taking place. As a result, defense counsel can consult his client with only minimal disruptions to the questioning. Conversely, should the defendant wish to ask about a particular juror based on observations of the juror’s facial expressions or gestures, he can easily flag his attorney. When questioning takes place in a separate room, the defendant and defense counsel can no longer engage in these simple communications; the questioning must be paused for several minutes at a time whenever defense counsel seeks to consult his client, and the defendant must ask to be admitted to the private room to ask his defense attorney even a simple question.