

FILED

07/07/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 20-0327

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 20-0327

LUKE STROMMEN,

Petitioner,

v.

MONTANA SEVENTEENTH JUDICIAL
DISTRICT COURT, VALLEY COUNTY,
THE HONORABLE JOHN W. LARSON,
PRESIDING,

Respondent.

FILED

JUL 07 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

O R D E R

Petitioner Luke Strommen, via counsel, has asked us to exercise supervisory control over the Seventeenth Judicial District Court, Valley County, in that court's Cause No. DC-18-32. Specifically, Strommen asks us to reverse the District Court's June 15, 2020 Order Denying Motion to Continue Trial. Strommen alleges supervisory control is necessary in this case because his constitutional rights are at stake and the District Court is causing a gross injustice by forcing him to proceed to trial with all witnesses appearing remotely and the public barred from attendance.

After receiving Strommen's petition for writ, we granted the District Court and the State of Montana the opportunity to respond in accordance with M. R. App. P. 14(7). Both the District Court and the State have responded.

**Remote Testimony**

On May 20, 2020, the District Court issued an Order on Trial Procedures in this matter which provided, in part, that "[a]ll witnesses, including the victim, will be given the option to testify via [Z]oom or other available video." Strommen then moved to continue the trial, which was set for July 13, 2020. The District Court denied Strommen's motion to continue on June 15, 2020, and Strommen then petitioned this Court on June 18, 2020.

In his petition for writ of supervisory control, Strommen alleges that the District Court erred by ruling that all of the State's witnesses for Strommen's trial could appear remotely. He argues that allowing all witnesses to testify remotely would violate his constitutional right of confrontation, and that in particular, he has the right to confront his accuser in person.

In its response, the District Court asserts that on June 24, 2020, it convened a pretrial hearing at which it withdrew that portion of its Order on Trial Procedures that allowed all witnesses to testify remotely. The District Court informs us that the only witness who will testify remotely is an expert witness whose request to testify remotely had been granted via District Court order on March 5, 2020.

Since no witnesses, except for one expert witness previously ruled upon, will testify remotely, this issue is moot.

**Public Presence**

In the May 20, 2020 Order on Trial Procedures, the District Court also ruled, "No observers will be permitted in the Valley County Courtroom. There will be a video feed at an alternate location[.]" In his petition for writ of supervisory control, Strommen argues that prohibiting the public from attending in person violates his constitutional right to a public trial under the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution.

In its response brief, the District Court explained that at the June 24, 2020 pretrial hearing, it informed the parties that the court would remain flexible and work with court staff to determine ways in which the public could have access to the trial, including a remote location for video viewing, an internet livestream, and if possible "a controlled entrance to the courtroom where observers, including press, may be allowed to view the trial in a socially-distanced manner or for limited periods of time as regulated by a door monitor." The court further asserted that aside from jury selection, the proceedings would occur in courtrooms that would allow a limited number of outside observers if those observers were screened for health issues and agreed to wear masks. In its response brief,

2

the State asserts that the public will not be denied the opportunity to view the trial, including voir dire, through a live video feed.

In arguing that the District Court's plan would violate his constitutional right to a public trial, Strommen relies upon *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210 (1984); *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721 (2010); and *Weaver v. Massachusetts*, __ U.S. __, 137 S. Ct. 1899 (2017). In *Waller*, the State of Georgia was granted its motion to close suppression hearings due to the sensitive nature of the information that might otherwise be revealed to the public. *Waller*, 467 U.S. at 41-42, 104 S. Ct. at 2213. The United States Supreme Court reversed, concluding that the closure of an entire suppression hearing, including those parts that did not reveal sensitive information, was overbroad and unjustified. Citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 511-12, 104 S. Ct. 819, 825 (1984), the Supreme Court held that a party seeking to close a hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect the interest, the trial court must consider reasonable alternatives to closing the proceeding, and the trial court must make findings adequate to support the closure. *Waller*, 467 U. S. at 48, 137 S. Ct. at 2216.

In *Presley*, a trial court instructed the lone observer present in the courtroom to leave not only the courtroom but that entire floor of the courthouse because the prospective jurors were about to enter and the court did not want a member of the public to intermingle with them. The defendant objected but the court overruled the objection, stating the courtroom was not large enough to accommodate both the prospective jurors and interested members of the public. *Presley*, 558 U.S. at 210, 130 S. Ct. at 722. After his conviction, Presley moved for a new trial; during a hearing on the motion, he conclusively demonstrated that the courtroom had ample seating for all the prospective jurors plus members of the public. The trial court denied his motion, stating that the decision to close the courtroom was within the court's discretion. *Presley*, 558 U.S. at 210-11, 130 S. Ct. at 722. Both the Court of Appeals of Georgia and the Supreme Court of Georgia affirmed the trial court, with the latter rejecting Presley's argument that the trial court had an obligation to consider alternatives to closing the courtroom. *Presley*, 558 U.S. at 211, 130 S. Ct. at 722-23.

3

However, the United States Supreme Court disagreed. On appeal, it held that a defendant has the right to insist that voir dire be conducted in public, although it also acceded there may be exceptions to this rule. *Presley*, 558 U.S. at 213, 130 S. Ct. at 724. It further held that trial courts must consider reasonable alternatives to closure that balance the public's access to voir dire testimony with the protection of the interests of prospective jurors. *Presley*, 558 U.S. at 214, 130 S. Ct. at 724 (quoting *Press-Enterprise*, 464 U.S. at 511, 104 S. Ct. at 825).

In *Weaver*, the defendant alleged ineffective assistance of counsel because his counsel did not object when the trial court was closed to the public for two days of the jury selection process. *Weaver*, __ U.S. at __, 137 S. Ct. at 1905. The jury panel for the trial was large and the courtroom did not have enough seating to accommodate the entire panel. The defendant's mother and her minister came to the courtroom to observe voir dire, but they were turned away due to lack of space. The defendant's mother complained to defense counsel, but counsel did not object. *Weaver*, __ U.S. at __, 137 S. Ct. at 1906. The defendant later moved for a new trial and while the Massachusetts courts agreed his trial counsel was ineffective, they upheld his conviction because he did not demonstrate he was prejudiced by counsel's ineffectiveness. *Weaver*, __ U.S. at __, 137 S. Ct. at 1906-07. The United States Supreme Court granted certiorari in order to resolve disagreement between lower courts as to whether a defendant must demonstrate prejudice in cases in which ineffective assistance of counsel caused a structural error that was neither preserved nor raised on direct review. *Weaver*, __ U.S. at __, 137 S. Ct. at 1907.

Noting that the violation of the right to a public trial is a structural error, the Supreme Court explained:

> [*Waller* and *Presley*] teach that courtroom closure is to be avoided, but that there are some circumstances when it is justified. The problems that may be encountered by trial courts in deciding whether some closures are necessary, or even in deciding which members of the public should be admitted when seats are scarce, are difficult ones. . . . How best to manage these problems is not a topic discussed at length in any decision or commentary the Court has found.

4

So although the public-trial right is structural, it is subject to exceptions. Though these cases should be rare, a judge may deprive a defendant of his right to an open courtroom by making proper factual findings in support of the decision to do so. The fact that the public-trial right is subject to these exceptions suggests that not every public-trial violation results in fundamental unfairness.

*Weaver*, __ U.S. at __, 137 S. Ct. at 1909 (internal citations omitted).

First, we note that Strommen's trial is not truly "closed" in the sense that the proceedings were closed in *Waller*, *Presley*, and *Weaver*. Unlike the cases upon which Strommen relies, the public will, at a minimum, be able to remotely view the proceedings in his case live and in real time. Furthermore, the District Court has ruled that a small number of the public may be allowed to attend Strommen's trial in person, as are able to be accommodated under the precautions the court is taking due to COVID-19.

As this Court has recognized, our judicial system is operating under unprecedented circumstances due to the COVID-19 pandemic. *See Disability Rights Mont. v. Mont. Judicial Dists. 1-22*, No. OP 20-0189, Order (Mont. Apr. 1, 2020); *Guyer v. Mont. Eighth Judicial Dist. Court*, No. OP 20-0233, Order (Mont. June 30, 2020). In *Presley*, the U.S. Supreme Court held that trial courts must consider reasonable alternatives to closure that balance the public's access to voir dire testimony with the protection of the interests of prospective jurors. *Presley*, 558 U.S. at 214, 130 S. Ct. at 724 (quoting *Press-Enterprise*, 464 U.S. at 511, 104 S. Ct. at 825). In *Weaver*, the U.S. Supreme Court acknowledged that under rare circumstances, a judge may deprive a defendant of the right to an open courtroom "by making proper factual findings in support of the decision to do so." *Weaver*, __ U.S. at __, 137 S. Ct. at 1909. Here, the District Court considered reasonable alternatives to closure and determined to offer the public access to live video streaming and to permit the attendance of as many members of the public as could be safely accommodated under the current circumstances. The District Court determined, however, that it could not accommodate any members of the public attending in person during voir dire due to the crowded courtroom conditions. In taking these steps, the District Court met *Presley's* requirements, considering reasonable alternatives and balancing the public's

5

right of access to the protection of the interests of prospective jurors—in this instance, their health and safety in the face of an uncontrolled pandemic. Such are the rare circumstances, envisioned by *Weaver*, that may allow a judge to deprive a defendant of the right to an open courtroom. However, as we note above, while Strommen's trial is not unequivocally open, neither is it truly closed. Rather, the District Court has endeavored to protect Strommen's constitutional rights while maintaining the public's health and safety. We conclude that the District Court made the proper factual findings in support of its decision in this instance.

For these reasons, we find no basis to support Strommen's petition for writ of supervisory control in this matter.

IT IS THEREFORE ORDERED that the petition for a writ of supervisory control is DENIED and DISMISSED.

This Court's Order staying proceedings is VACATED.

The Clerk is directed to provide copies of this Order to the Hon. John W. Larson, Seventeenth Judicial District, and to all counsel of record in the Seventeenth Judicial District Court's Cause No. DC-18-32.

DATED this 7th day of July, 2020.

_____
Chief Justice

_____

_____

_____

_____
Justices

6