*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERRY STANLEY,

        Defendant-Appellant.

UNPUBLISHED
June 25, 2019

No. 340464
Wayne Circuit Court
LC No. 17-003086-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERRY STANLEY,

        Defendant-Appellant.

No. 340465
Wayne Circuit Court
LC No. 17-003087-01-FC

---

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions in two separate cases that were consolidated for trial. In Docket No. 340464, defendant appeals his convictions of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 340465, defendant appeals his convictions of conspiracy to commit armed robbery, MCL 750.157a & MCL 750.529, armed robbery, and felony-firearm. In Docket No. 340464, the court sentenced defendant to prison terms of 14 to 30 years for the armed robbery conviction, 5 to 10 years for the assault conviction, one to five years for the CCW conviction, and two years for each felony-firearm conviction. In Docket No. 340465, the court sentenced defendant to prison terms of 10 to 30 years each for the conspiracy and armed robbery convictions, and two years for

-1-

the felony-firearm conviction.[1]  For the reasons set forth in this opinion, we reverse defendant's conviction and sentence for conspiracy to commit armed robbery, and remand for the purposes of correcting the judgment of sentence.  In all other aspects we affirm.

## I.  BACKGROUND

These cases arise from two armed robberies that occurred on the evening of December 16, 2016, in Detroit.  At trial, the prosecution presented evidence that defendant approached Hosea Hyman Perez Ortiz (Perez) as Perez was returning to his house, robbed him at gunpoint, and then shot him in the back.  A little while later, as Gladiola Vasquez Hernandez (Vasquez) was returning to her home, defendant robbed her at gunpoint and hit her in the face with the gun.  Vasquez observed defendant get into the driver's seat of a vehicle that was occupied by at least two other individuals.  After a border agent sighted a vehicle matching Vasquez's description and ran the license plate number, they obtained the address of defendant's father, Prentice Russ, to whom the vehicle was registered.  When the vehicle returned to Russ's residence on Lesure Street in Detroit, defendant, Russ, and defendant's brother got out of the vehicle.  No weapons or evidence related to the robberies were found.

At trial, Perez testified that he did not recognize defendant while he was being robbed, but after police showed him a photographic lineup he realized that he knew defendant.  Perez identified defendant in the photographic lineup and at trial as the man who robbed him.  Similarly, Vasquez identified defendant in a photographic lineup and at trial as the man who robbed her.  Defendant did not testify or present any witnesses at trial.  The defense theory at trial was misidentification.  Defendant was convicted of armed robbery, assault with intent to do great bodily harm less than murder, CCW, and two counts of felony-firearm related to Perez, and conspiracy to commit armed robbery, armed robbery, and felony-firearm related to Vasquez.  Defendant was sentenced as indicated above, and now brings this appeal as of right.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first argues that he was denied the effective assistance of counsel by defense counsel's failure to (1) present an alibi defense after filing an alibi notice, and (2) request the appointment of an expert on eyewitness identification evidence.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law.  This Court reviews findings of fact for clear error and questions of law de novo."  *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citations omitted).  However, because defendant did not raise his claims of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue "is limited to mistakes apparent from the record."  *Id*.

In *Heft*, this Court stated:

---

[1]  The sentences in both cases run concurrently with one another, with the felony-firearm sentences all running concurrently with one another and consecutive to the other sentences.

-2-

A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* at 80-81 (citations omitted).]

"Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted).

## A. FAILURE TO PRESENT AN ALIBI DEFENSE

First, defendant argues that defense counsel provided ineffective assistance by failing to present an alibi defense at trial after he previously filed an alibi notice and identified the alibi witnesses for the jury during voir dire. The defense filed a "Notice Of Alibi" on July 24, 2017. According to defendant, the notice listed four alibi witnesses who would have testified that defendant was with them at an address on Barton Street until 10:30 p.m. on December 16, 2016. At the start of the trial, the trial court listed "witnesses who may be called during this trial" and asked the potential jurors whether they knew any of the named witnesses. The trial court's list included the four alibi witnesses' names.[2] At trial, however, defense counsel did not call any witnesses to testify.

As stated by this Court in *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009):

An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. [Quotation marks and citations omitted.]

This Court will not substitute its judgment for that of counsel on matters of trial strategy, nor will it use the benefit of hindsight when assessing counsel's competence. *Id*.

---

[2] Contrary to defendant's assertions, the trial court, not defense counsel, named the witnesses for the potential jurors. Furthermore, the potential witnesses were not identified as alibi witnesses. Thus, defendant's claim that defense counsel's failure to call those witnesses was "tantamount to a concession of guilt" is without merit.

Defendant fails to overcome the presumption that defense counsel's decision not to call the alibi witnesses at trial was sound trial strategy. Defense counsel indicated on the record at trial that the defense intended to rest without calling any witnesses, stating:

> I've had many occasions to speak with my young client about his absolute right to testify, and indeed produce witnesses. The Court ordered that an Investigator be appointed, we've secured statements from several witnesses. As a strategic matter, the defense lawyer's not going to call these witnesses.

Thereafter, the trial court asked defendant whether he had heard what defense counsel had said, and defendant said yes. Defendant then waived his right to testify. Even though defendant did not expressly state his agreement with the decision not to call any witnesses, defense counsel's statements establish that he obtained statements from witnesses and that his decision not to present an alibi defense was a matter of strategy. Instead of presenting an alibi defense, defense counsel proceeded on a theory of false or mistaken identification. Because it is apparent from the record that defense counsel elected not to call witnesses in support of an alibi defense as a matter of trial strategy, and defendant has not presented any evidence to overcome the presumption of sound strategy, defendant fails to establish that defense counsel's performance fell below an objective standard of reasonableness. Accordingly, defendant is not entitled to relief on this issue.

## B. FAILURE TO REQUEST THE APPOINTMENT OF AN EXPERT

Defendant also argues that defense counsel was ineffective for failing to request the appointment of an expert on eyewitness identification. The prosecution's case at trial was based on the victims' identifications of defendant, and the defense theory was mistaken identification. However, defendant again fails to overcome the presumption that defense counsel's decision not to retain an expert witness was sound trial strategy. Principally, defendant fails to establish the factual predicate for his claim. Defendant argues that an expert could have testified about the unreliability of eyewitness identification, including how the stress of the event made it less likely that the identifications were reliable. While defendant relies on numerous studies, treatises, and reports, he fails to offer any affidavit from an expert or some other offer of proof that an expert witness would have testified in the manner he alleges or in any manner favorable to the defense. There is nothing provided on appeal from which we could glean a rationale or basis for a finding that the retention and testimony of such an expert witness would have had an impact on the result of these proceedings or that the failure to procure such an expert resulted in prejudice to defendant. Thus, even presuming that defendant was ineffective for failing to provide an expert on identification, defendant has not established a reasonable probability that, but for counsel's alleged error, the result of the proceedings would have been different. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003).

## II. RIGHT TO A PUBLIC TRIAL

Next, defendant contends that the trial court erred by excluding his mother from the courtroom during part of the trial, in violation of his Sixth Amendment right to a public trial. Defendant failed to preserve his claim that the trial court violated his Sixth Amendment right to a public trial by objecting in the trial court. See *People v Vaughn*, 491 Mich 642, 646; 821 NW2d

288 (2012). Thus, our review is for plain error affecting defendant's substantial rights. *Id*. at 664-665. Defendant must show "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 665 (citation omitted).

On the second day of trial, the prosecutor stated that she was informed that, after the end of the first day of trial, individuals heard defendant's mother yelling at defense counsel in the hallway and Juror Number 5 was present. Defense counsel told defendant's mother that they needed to "go over here" because there was a juror present. The prosecutor believed that she heard defendant's mother yell, "well you know what, it doesn't matter anyway, because half those juries live in my community, and I know them." The trial court agreed to question Juror Number 5 regarding what he had heard. The trial court also questioned defendant's mother, Katrina Stanley, who indicated that she understood that she could not yell outside the courtroom because of the presence of jurors, but stated that she had not seen the juror. She denied saying "half of those jurors," and told the trial court that she had said that one of the jurors looked familiar. The trial court told Katrina that her behavior was inappropriate and asked her to leave the courtroom and the building until the trial was over. The trial court warned the other members of the public not to "talk or be in sight of" any juror and that "if anybody else does that, there's going to be just as serious, if not more serious consequences." Thereafter, the trial court and the attorneys questioned Juror Number 5, but he was not dismissed from the jury.

The Sixth Amendment of the United States Constitution and Const 1963, article 1, § 20 guarantee the right to a public trial. *Vaughn*, 491 Mich at 650. As stated in *Vaughn*:

> A defendant's Sixth Amendment right to a public trial is limited, and there are circumstances that allow the closure of a courtroom during any stage of a criminal proceeding, even over a defendant's objection:
>
> > [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. [*Id.* at 653 (quotation marks and citation omitted).]

"[I]t does not follow that every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned." *Id*. at 667 (quotation marks and citation omitted). The right to a public trial serves the goals of "(1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *Id*. Only a substantial, rather than a compelling, reason in required for a partial closures. *People v Gibbs*, 299 Mich App 473, 481; 830 NW2d 821 (2013).

MCR 8.116(D)(1), which governs access to court proceedings, provides:

Except as otherwise provided by statute or court rule, a court may not limit access by the public to a court proceeding unless

(a) a party has filed a written motion that identifies the specific interest to be protected, or the court *sua sponte* has identified a specific interest to be protected, and the court determines that the interest outweighs the right of access;

(b) the denial of access is narrowly tailored to accommodate the interest to be protected, and there is no less restrictive means to adequately and effectively protect the interest; and

(c) the court states on the record the specific reasons for the decision to limit access to the proceeding.

In *Presley v Georgia*, 558 US 209, 210; 130 S Ct 721; 175 L Ed 2d 675 (2010), the trial court excluded the lone courtroom observer, the defendant's uncle, from the courtroom during voir dire, citing concerns about space. The trial court indicated that the observer could return after voir dire. *Id*. At a hearing on the defendant's motion for a new trial, defendant showed that there would have been adequate room for the public in the courtroom. *Id*. at 210-211. The Supreme Court concluded that the trial court failed to take every reasonable measure to accommodate public attendance at criminal trials by failing to consider alternatives to closure. *Id*. at 215. The Court further stated that "even assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure." *Id*. at 216.

We begin our analysis of this issue by applying the factors set forth by our Supreme Court in *Vaughn*. Applying those factors we conclude: "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights." *Id*. at 665 (citation omitted). Here, the trial court excluded defendant's mother without first considering any reasonable alternatives to her exclusion from the courtroom and the courthouse. The failure to consider alternatives to closure is error under *Presley*. 558 US at 216. Additionally, the trial court made no finding as to whether the exclusion of defendant's mother would be broader than necessary to protect the interests the trial court had in preventing inappropriate behavior in front of jurors[3]. In sum, the trial court failed to follow MCR 8.116(D)(1). Accordingly, error occurred and the error was plain. As to the third factor in *Vaughn*, because we are dealing with unpreserved structural error, our Supreme Court instructed us in *People v Duncan* 462 Mich 47, 51; 610 NW2d 551 (2000), that such errors "are intrinsically harmful, without regard to their effect on the outcome . . ." See also, *Vaughn*, 491 Mich at 666. Accordingly, our caselaw suggests that a plain structural error satisfies the third *Vaughn* prong. Left open then is the question of whether " the error

---

[3] We note that the trial court never specifically stated its explicit basis for its exclusion of defendant's mother. However, our review of the trial court's statements lead us to conclude that the trial court's chief concern was preventing improper behavior by defendant's mother and deterring others from engaging in similar disruptive conduct in front of the jury.

either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 665.

In *Vaughn*, our Supreme Court set forth the standard of review to be utilized when deciding this issue:

> Nevertheless, even if defendant can show that the error satisfied the first three *Carines* requirements, we "must exercise . . . discretion" and only grant defendant a new trial if the error "resulted in the conviction of an actually innocent defendant" or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Although denial of the right to a public trial is a structural error, it is still subject to this requirement. While "any error that is 'structural' is likely to have *an* effect on the fairness, integrity or public reputation of judicial proceedings," the plain-error analysis requires us to "consider whether an error '*seriously*' affected those factors." *Id.* at 666-667. (internal citations omitted).

We therefore set forth to determine whether exclusion of defendant's mother from the courtroom resulted in an actually innocent defendant being convicted or that her removal seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

A. Denial of Defendant's Claim will not Result in an Actually Innocent Defendant being Convicted.

In keeping with our Supreme Court's mandate, we review the trial court record to determine if the error resulted in the conviction of an actually innocent defendant. Our review of the record does not lead us to any factual or legal connection between the exclusion of defendant's mother from the courtroom and the jury's verdict. Further, there is nothing within the record which leads us to conclude that defendant did not receive a fair trial based on the exclusion of his mother. Rather, our review leads us to conclude that based on the record evidence produced, there was sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that defendant committed the offenses for which he had been charged. Both victims identified defendant from a photographic lineup and at trial. One of the victims realized he knew defendant after viewing the photographic lineup. During all stages of proceedings in this matter, neither victim wavered in either their descriptions of events or in their description and identification of defendant. On this record, we are not presented with any basis from which we may conclude that an actually innocent defendant was convicted in this case. Hence, we turn to whether exclusion seriously affected the fairness, integrity or public reputation of the proceedings.

B. Exclusion of Defendant's Mother did not Seriously Affect the Fairness, Integrity, or Public Reputation of Judicial Proceedings.

Next we examine if the trial court's exclusion of defendant's mother seriously affected the fairness, integrity, or public reputation of judicial proceedings. Anytime a trial court excludes a member of the public and does so in violation of court rule and our Constitutions, there will, of course, be some affect as to the fairness, integrity, or public reputation of judicial

proceedings. However, the issue presented here is whether the exclusion *seriously* affected the fairness, integrity, or public reputation of judicial proceedings. To answer, we again turn to the record evidence presented.

We note that our examination of this issue is independent from our conclusions as to defendant's guilt as to the charged offenses. Indeed, the objective of our analysis is to ensure that during the proceedings, defendant was afforded the protections of the Sixth Amendment, irrespective of his guilt or innocence. As stated, in *Vaughn*, the goals sought by these protections include (1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury. *Vaughn*, 491 Mich at 667. After review of the record, we cannot find any evidence, and defendant has not alerted us to any evidence, which would lead us to conclude that defendant was denied any of these goals.

We note that our presumed basis for defendant's mother being excluded from the courthouse was to discourage improper behavior and conduct in front of the jury. Such a rationale supports a finding that the trial court was seeking to protect important interests, namely the orderly running of the trial coupled with the freedom from fear for jurors to render their verdict based on the evidence and not how their verdict will impact singular members of their community. However, as we have already held, based on the lack of a record as to its reasons, removal of defendant's mother, was likely broader than necessary to protect that interest. However, our earlier holding of error does not preclude us from also holding that the trial court, in ordering the removal of defendant's mother from the courtroom, was seeking to protect these important interests.

Additionally, we note that at the time of the removal, the remaining witnesses who were called to testify were police officers who were aware of their obligations to come forward and testify truthfully. Further, there were no additional restrictions as to members of the public gaining access to the proceedings, and nothing within the record indicates that any of the witnesses called after exclusion of defendant's mother from the courtroom testified in a manner inconsistent with their reports or prior testimony.

The record therefore reveals that there existed a legitimate basis to seek the removal of defendant's mother from the courtroom. Further, based on the mother's conduct, we can envision a scenario where defendant's mother could have been lawfully removed from the courtroom based on her behavior—as a deterrent to her and to others not to engage in such antics. Hence, examination of the record as a whole leads us to conclude that---whether defendant was actually innocent or guilty of the charges against him---exclusion of defendant's mother from the courtroom midway through the trial did not deprive defendant of the of the protections conferred by the Sixth Amendment. Accordingly, we cannot find that exclusion of defendant's mother midway through the trial seriously affected the fairness, integrity, or public reputation of judicial proceedings. Defendant is not entitled to relief on this issue.

## III. JOINDER

Defendant next argues that the trial court erred by permitting the prosecution to join two separate criminal incidents into a single prosecution for trial.

In *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009), our Supreme Court stated:

> Generally, this Court reviews questions of law de novo and factual findings for clear error. The interpretation of a court rule, like matters of statutory interpretation, is a question of law that we review de novo. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute "related" offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review. [Citations omitted.]

MCR 6.120(B), which governs postcharging permissive joinder, provides:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.
>
> (3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

Accordingly, "[o]ffenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.'" *Williams*, 483 Mich at 233 (citation omitted).[4] The *Williams* Court explained that charges are not related

---

[4] In *Williams*, the Court analyzed an earlier version of the court rule. *Williams*, 483 Mich at 233 & n 5.

"simply because they [are] of the same of similar character." *Id*. at 235 (quotation marks and citation omitted). Moreover, joinder is appropriate when the charges are "logically related" and "there is a large area of overlapping proof." *Id*. at 237 (quotation marks and citation omitted).

Defendant argues that the two incidents that were joined for trial were "completely different" because they involved different victims, occurred at different times, and occurred under different circumstances. He also argues that the first act did not facilitate the second. However, the facts at trial established that the two offenses were a series of acts constituting parts of a single scheme or plan. The armed robberies of Perez and Vasquez were similar in character. Both robberies appeared be part of a scheme to commit armed robberies on isolated victims as they were returning to their homes in Detroit on the evening of December 16, 2016. The evidence indicated that the two offenses occurred less than two hours apart. The similarity of defendant's conduct during the two offenses and the closeness in time between the offenses shows a logical and temporal relationship between the charges. Moreover, the record establishes that there was a "large area of overlapping proof." *Williams*, 483 Mich at 237 (quotation marks and citation omitted). The evidence regarding the border patrol agent's observation and pursuit of the vehicle involved and the investigation of the occupants of the vehicle at the Lesure address was relevant to both cases. Other factors also weighed in favor of joinder—the prosecution's motion appeared to be timely, there was little potential for confusion or prejudice from joinder of the two offenses, and joinder was convenient for the witnesses who would have been called to testify at both trials. Thus, the trial court did not err by ruling that joinder was permissible.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his conviction of conspiracy to commit armed robbery.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Willis*, 322 Mich App 579, 583; 914 NW2d 384 (2018). In determining whether sufficient evidence to support a conviction was presented at trial, "this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. "Whether conduct falls within the scope of a criminal statute . . . is a question of statutory interpretation that we review de novo." *Id*. at 584.

MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein . . . ." In *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), this Court explained:

> A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense. The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement. The intent, including knowledge of the intent, must be shared by the individuals. Thus, there must be proof showing that the parties specifically intended to further, promote, advance, or pursue an unlawful objective. Direct

-10-

proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties. [Quotation marks and citations omitted.]

"Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). "For intent to exist, the defendant must know of the conspiracy, must know of the objective of the conspiracy, and must intend to participate cooperatively to further that objective." *People v Blume*, 443 Mich 476, 485; 505 NW2d 843 (1993).

As stated by this Court in *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007), the elements of armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

Defendant argues that there was no evidence that he intended to conspire or agreed with the other individuals in the vehicle to rob Vasquez. We agree with defendant's assertion that there was no direct evidence of a conspiracy, and the circumstantial evidence was insufficient for a rational trier of fact to conclude that defendant conspired with the individuals in the vehicle to commit armed robbery on Vasquez. Vasquez testified that she saw three or four individuals in the vehicle that defendant got into after the offense. There was, however, no direct or circumstantial evidence that the other individuals were aware of the plan to rob Vasquez and intended to participate in that plan. Vasquez testified that defendant got into the driver's seat after he robbed her. Thus, there was no evidence that one of the other individuals drove to or from the armed robbery, which might have supported a reasonable inference that the individual had the knowledge and intent to conspire with defendant. Furthermore, while Perez observed a similar vehicle during the first armed robbery, he did not see any individuals in the vehicle. Accordingly, there was no evidence that the other individuals were present during or aware of the earlier armed robbery of Perez, such that their knowledge and intent to commit the second robbery of Vasquez could be inferred. Finally, given Vasquez's testimony that defendant got into the driver's seat of the vehicle, the conduct in fleeing from law enforcement after the armed robbery can only be attributed to defendant. While a backseat occupant turned around and looked at the border patrol agent before the vehicle accelerated, there was no evidence that such individual had any knowledge of the armed robbery or intended to further the conspiracy by fleeing from the police. Based on the testimony presented at trial, the other individuals were merely present in the vehicle while defendant committed the armed robbery of Vasquez, which is insufficient to establish that they conspired with defendant to commit the offense. Accordingly, there was insufficient evidence to establish a conspiracy.

We reverse defendant's conviction and sentence for conspiracy to commit armed robbery in Docket No. 340465, and remand for correction of the judgment of sentence. We affirm defendant's remaining convictions and sentences in both appeals. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello