*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 13, 2026
10:33 AM

v

No. 369087
Macomb Circuit Court
LC No. 2022-001255-FC

COREY TERRELL CRUMP,

Defendant-Appellant.

Before: BOONSTRA, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole (LWOP) for his first-degree felony murder conviction, a prison term of 12 to 20 years for his armed robbery conviction, and the mandatory two-year term for each of his felony-firearm convictions. The trial court ordered that defendant's sentences for his felony-firearm convictions were to run concurrently to each other and be served consecutively to his concurrent sentences for felony murder and armed robbery. We affirm defendant's convictions, but vacate his sentence for first-degree felony murder and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from the fatal shooting of Hertie Lloyd in Clinton Township. The evidence at trial established that defendant, accompanied by Makaesiah Willis, Tatiana Johnson, and Kolbe Burkes, arranged to meet with Lloyd to purchase marijuana, and drove to meet him in Johnson's car. However, once Lloyd got into the car with the foursome, defendant pointed a gun at Lloyd, ordering him to turn over his money and marijuana. The two engaged in a struggle, and defendant shot Lloyd several times, including four times in the back, as Lloyd attempted to escape the car. Willis and Burkes identified defendant as the shooter at trial, and evidence at trial indicated that defendant's DNA was found on Lloyd's hands. The prosecution also introduced evidence of

-1-

defendant's Facebook and Instagram messages in which defendant discussed, and boasted about, shooting Lloyd. Defendant was 19 years old at the time of the shooting.

The jury convicted defendant as described. The trial court sentenced defendant to mandatory LWOP (for first-degree felony murder), as was required by statute at the time. This appeal followed.

After defendant filed his claim of appeal in this Court, the prosecution filed a motion for a remand to seek resentencing and reimposition of an LWOP sentence following our Supreme Court's decision in *People v Taylor*, ___ Mich ___, ___; ___ NW3d ____ (2025). This Court granted the motion.[1] The prosecution subsequently filed a motion in the trial court under MCL 769.25 requesting that defendant be resentenced to LWOP. The parties then filed a joint motion requesting that this Court order the trial court to hold defendant's resentencing in abeyance pending the resolution of this appeal, which this Court granted.[2] Defendant subsequently filed a motion in the trial court to strike the prosecution's motion for LWOP as untimely, which the trial court denied.

## II. COURTROOM CLOSURE DURING VOIR DIRE

On appeal, defendant first argues that he was deprived of his right to a public trial under the Sixth Amendment to the United States Constitution when the trial court closed the courtroom to spectators during voir dire. Defendant also argues that his trial counsel was ineffective for failing to raise an objection to the trial court's decision to exclude spectators during voir dire. We disagree with both arguments.

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

To preserve his claim that he was denied his right to a public trial under the Sixth Amendment, defendant was required to raise this issue in the trial court. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Defendant did not object to the trial court's decision to close the courtroom to spectators during voir dire, and therefore his claim of error is not preserved for this Court's review. *Id*. Generally, the erroneous denial of a defendant's right to a public trial constitutes a structural error. *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022). Although structural errors usually require automatic reversal, if the alleged error is forfeited, this Court will review the error under the plain-error analysis. *Id*. To avoid forfeiture of an unpreserved claim of error, a defendant must generally satisfy the following elements of the plain-error test:

(1) error occurred, (2) the error "was plain, i.e., clear or obvious," and (3) "the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Further, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error

---

[1] See *People v Crump*, unpublished order of the Court of Appeals, entered August 21, 2025 (Docket No. 369087).

[2] See *People v Crump*, unpublished order of the Court of Appeals, entered September 5, 2025 (Docket No. 369087).

seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks, brackets, and citation omitted in original). [*Davis*, 509 Mich at 67-68 (alteration in original).]

However, with respect to the third element, in the context of structural errors, the analysis of prejudice is "jettisoned," and will "defy analysis." *Davis*, *id*. at 73. Put another way, once the existence of a forfeited structural error is determined, prejudice is presumed, and the defendant does not bear the burden of establishing "outcome-determinative prejudice." *Id*. at 74.

A defendant preserves a claim of ineffective assistance of counsel by filing a motion for a new trial or a *Ginther*[3] hearing in the trial court. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 430-431; 884 NW2d 297 (2015). A defendant may also preserve a claim of ineffective assistance of counsel by filing a motion to remand in this Court. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did not move for a new trial or a *Ginther* hearing in the trial court or file a motion to remand on the basis of ineffective assistance of counsel in this Court, rendering his claims of ineffective assistance of counsel unpreserved. *Jackson* (*On Reconsideration*), 313 Mich App at 430-431; *Abcumby-Blair*, 335 Mich App at 227. We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). To establish ineffective assistance of counsel, a defendant must show both that (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced as a result of that deficient performance. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

We review for clear error the trial court's factual determinations, if any. *Id*. at 68. Clear error exists when, after a review of the record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*.

## B. ANALYSIS

The right to a public trial is protected by both the United States Constitution and the Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. See also *Davis*, 509 Mich at 66. The right to a public trial under the Sixth Amendment and Const 1963, art 1, § 20, includes the right to a public voir dire process. *Presley v Georgia*, 558 US 209, 213; 130 S Ct 721; 175 L Ed 2d 675 (2010); *People v Vaughn*, 491 Mich 642, 651; 821 NW2d 288 (2012). The right to a public trial serves multiple interests, one of which is to ensure that the public sees that the accused is fairly dealt with as opposed to being " 'unjustly condemned.' " *Davis*, 509 Mich at 66, quoting *Gannett Co v DePasquale*, 443 US 368, 380; 99 S Ct 2898; 61 L Ed 2d 608 (1979). The right to a public trial also requires that the trial court and the prosecutor fulfill their duties ethically, encourages witnesses to come forward, and discourages individuals from committing perjury. *Davis*, 509 Mich at 66. However, this important constitutional right is not without its limits, and under certain circumstances a trial court may determine that closing the courtroom during "any state of a criminal proceeding" is necessary. *Id*. The foundation underlying the Sixth Amendment right to a public trial is to protect against any attempts to use the judicial system " 'as instruments of persecution.' " *Gannett Co*, 443 US at 380, quoting *In re Oliver*, 333 US 257, 270; 68 S Ct

---

[3] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

499; 92 L Ed 2d 682 (1979). The United States Supreme Court has also recognized that ensuring that a criminal trial is subject to " 'contemporaneous review in the forum of public opinion' " is an effective tool in preventing any possible abuses of the judicial power. *Gannett Co*, 443 US at 380, quoting *In re Oliver*, 333 US at 270. In *Gannett Co*, 443 US at 380, our Supreme Court recognized that the presence of spectators keeps both the trial court and the prosecution "keenly alive to a sense of their responsibility," as well as the importance of their respective functions.

Our Supreme Court in *Vaughn*, 491 Mich at 653, quoting *Waller v Georgia*, 467 US 39, 48; 104 S Ct 2210; 81 L Ed 2d 31 (1984), explained when a courtroom may be closed:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." [Alteration in original.]

In this case, the record shows that the trial court did not order spectators barred from the courtroom for the entirety of the trial. Rather, the court stated that the courtroom did not have room for spectators who were not potential jurors during the process of voir dire. In other words, the overriding interest that the trial court noted as the rationale for its determination to close the courtroom during voir dire was that it simply did not have room to include 65 potential jurors as part of the jury venire and to also allow spectators. We conclude that the trial court recognized that the need to limit spectators to "make the courtroom a safer environment for the jury and others" was an overriding public interest that would have been prejudiced if the courtroom had remained open to the public during the voir dire proceedings. See *People v Sherrill*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 360133); slip op at 6; cf. *Presley*, 558 US at 215 (stating that nothing in the record of that case demonstrated that the trial court "could not have accommodated the public"). The trial court repeatedly made it clear that there was simply insufficient space to accommodate both the jury venire and spectators. *Id.*

The record also shows that the trial court's closure of the courtroom was not broader than necessary to protect the overriding public interest of maintaining the safety of everyone in the courtroom. *Vaughn*, 491 Mich at 653. The trial court was clear that the closure would remain only for voir dire.

The record does not indicate whether the trial court considered any other reasonable alternatives. Further, the trial court did not make factual findings on the record to support its decision to close the courtroom. However, similar to the defendant in *Sherrill*, ___ Mich App at ___; slip op at 6, defendant here did not object to the closure of the courtroom, which would have given the trial court an opportunity to consider any other reasonable alternatives and make factual findings on the record. Moreover, even though the trial court did not make express findings concerning whether it had considered (and presumably rejected) possible alternatives to closing the courtroom, it did state on the record on more than one occasion throughout voir dire that there was not room in the courtroom for much more than the 65 people that were part of the jury venire, counsel, and the court staff, and that a temporary closure to spectators who were not part of the venire was required. Defendant has not established that these factual statements by the trial court were clearly erroneous. Therefore, on this record, we are satisfied that the court's reasons for

closing the courtroom to spectators were discernible from the record. See *Weaver v Massachusetts*, 582 US 286, 298; 137 S Ct 1899; 198 L Ed 2d 420 (2017) (noting that the failure of a trial court to make factual findings before making "an otherwise valid decision to order the courtroom temporarily closed" will not necessarily result in a trial being held to be "fundamentally unfair").

Defendant has not established plain error that "is readily apparent from the record.". *Davis*, 509 Mich at 72. Further, although defendant was not required to establish prejudice, we note that there is no indication that the trial court's decision to close the courtroom for voir dire rendered defendant's trial " 'fundamentally unfair' " or an " 'unreliable vehicle for determining guilt or innocence.' " *Id*. at 73-74, quoting *Neder v United States*, 527 US 1, 8-9; 119 S Ct 1827; 144 L Ed 2d 35 (1999). In *Vaughn*, 491 Mich at 667, quoting *Barrows v United States*, 15 A3d 673, 679-680 (DC, 2011), our Supreme Court recognized that any structural error is likely to have an effect on the fairness, integrity, or public reputation of judicial proceedings; however, when engaging in plain-error analysis, appellate courts are to consider whether an error " 'seriously' affected those factors." The focus for this Court is whether the actions of the trial court, and the effect that they had on the conduct of the defendant's trial, deprived defendant of the Sixth Amendment's constitutional protections. *Vaughn*, 491 Mich at 667. In *Vaughn*, *id*., our Supreme Court further explained that these constitutional protections further the following goals:

> (1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury.

In *Vaughn*, *id*., our Supreme Court cited with approval a federal case in which the United States Court of Appeals for the Second Circuit ruled that the encouragement of witnesses and the discouragement of perjury were not affected when only the voir dire was closed to the public, because no testimony was taken during voir dire. *Vaughn*, 491 Mich at 667-668, citing *Gibbons v Savage*, 555 F3d 111, 121 (CA 2, 2009). Further, the Court noted that in *Gibbons*, the Second Circuit had held that the need to ensure a fair trial, as well as the need to remind the court and the prosecution of their important functions and responsibility to the defendant, were not subverted when the voir dire proceedings were limited to the attorneys, the trial court judge, the defendant, and the jury venire for one afternoon. *Id.* The Court also noted that the record indicated that both parties were given the opportunity to "engage[] in a vigorous voir dire process," that neither party had objected to the other party's exercise of peremptory challenges, and that both parties had expressed their satisfaction with the jury as selected. *Vaughn*, 491 Mich at 668. Therefore, because the trial court's decision to close the courtroom ensured that the voir dire process remained vigorous and resulted in a jury that satisfied both parties, our Supreme Court could not conclude that the closure of the courtroom " 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Vaughn*, 491 Mich at 668-669, quoting *Carines*, 460 Mich at 774.

In this case, similar to *Vaughn*, the record reflects that both the prosecution and the defense were able to participate in a lengthy and vigorous voir dire process, the parties did not object to the opposing side's exercise of peremptory challenges, and both parties expressed their approval of the jury as selected. Further, as stated, the courtroom was only closed during voir dire, and therefore did not hinder the goals of encouraging witnesses to come forward and discouraging perjury. See *Gibbons*, 55 F3d at 121. Also, the need to ensure that defendant's criminal trial was

subject to " 'contemporaneous review in the forum of public opinion' " to avoid any abuse of judicial power was protected here, *Gannett Co*, 443 US at 380, quoting *In re Oliver*, 333 US at 270, because the 65 individuals in the jury venire, who were members of the public, were present to observe the proceedings to ensure that defendant was dealt with in a fair manner. Therefore, we conclude that any error on the part of the trial court did not "seriously affect the fairness, integrity, or public reputation of the judicial proceeding." *Davis*, 509 Mich at 76.

Finally, with regard to his claim of ineffective assistance of counsel, defendant has not overcome the presumption that the failure of trial counsel to object to the trial court's order excluding spectators from the courtroom was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Defendant's trial counsel was present in the courtroom and could observe the accuracy of the trial court's statements concerning the courtroom's capacity, and could have concluded as part of sound trial strategy that the best option available was to conduct the voir dire without the presence of additional spectators apart from the other members of the venire. This Court will not interfere with trial counsel's strategic decisions with the benefit of hindsight. *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019).

## III. PROSECUTORIAL ERROR

Defendant next argues that he was denied his right to a fair trial on the basis of prosecutorial error.[4] Defendant also asserts that his trial counsel was ineffective for failing to raise objections to the challenged conduct of the prosecution. We disagree in both respects.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of prosecutorial misconduct, a defendant is generally required to raise a contemporaneous objection to the alleged misconduct. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Defendant did not do so in this case; therefore, his claims of error are not preserved for review. *Id.* We review such unpreserved claims for plain error affecting defendant's substantial rights. *Carines*, 460 Mich 750 at 763.

Defendant did not move for a new trial or a *Ginther* hearing in the trial court or file a motion to remand on the basis of ineffective assistance of counsel in this Court, rendering his claim of ineffective assistance of counsel unpreserved. *Jackson* (*On Reconsideration*), 313 Mich App at 430-431; *Abcumby-Blair*, 335 Mich App at 227. Our review of defendant's ineffective assistance claim is accordingly limited to errors apparent from the record. *Johnson*, 293 Mich App at 90.

---

[4] Because "prosecutorial misconduct" has become a term of art that should be limited to claims that the prosecution has engaged in professional misconduct or illegal conduct, defendant's claims of error are better characterized as "prosecutorial error." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

## B. ANALYSIS

Because the prosecution's primary responsibility is to seek justice, rather than to secure a conviction, the test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court reviews claims of prosecutorial error on a case-by-case basis, reviewing the record as a whole and considering the prosecution's comments in their proper context. *Id*. at 64. The prosecution is not permitted to vouch for the credibility of a witness by indicating that the prosecution is in possession of information suggesting that the witness is particularly worthy of belief. *Isrow*, 339 Mich App at 529. However, the prosecution may argue that a witness is credible, on the basis of the evidence and the inferences arising from that evidence. *Id*. at 529-530; *Jackson* (*On Reconsideration*), 313 Mich App at 426.

Defendant argues that the prosecution improperly bolstered the credibility of key prosecution witnesses through the testimony of Clinton Township Police Detective Jason Figurski. We disagree. The record shows that the prosecution asked Detective Figurski if statements that Burkes, Johnson, and Willis made to police regarding the incident were consistent with each other, and that Detective Figurski answered based on his repeated interviews of the witnesses during the investigation of the case. Neither the prosecution nor Detective Figurski suggested that the prosecution had special knowledge that the witnesses were telling the truth. See *Isrow*, 339 Mich App at 529. Defendant has not established prosecutorial error regarding this testimony.

Defendant also claims that Detective Figurski improperly gave his opinion regarding the meaning and interpretation of defendant's Instagram messages admitted into evidence. We again disagree.

At the time of trial,[5] MRE 701 provided:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Accordingly, the prosecution may present the opinion testimony of a lay witness if that testimony is rationally based on the witness' own perceptions and helpful to the jury in determining a disputed issue in the case. See *People v Fomby*, 300 Mich App 46, 49-51; 831 NW2d 887 (2013). However, such testimony may not invade the province of the jury, such as by offering an opinion regarding whether a defendant is guilty or innocent of the charged offenses. *Id.* at 52.

In this case, during cross-examination, Detective Figurski agreed that as a 21-year police officer, he was familiar with what defense counsel termed "street talk," i.e., the slang terms used in defendant's Instagram messages. Detective Figurski also described that the entire record of

---

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxviii (2023). All references to the Michigan Rules of Evidence in this analysis pertain to the version of the rule in effect at the time of trial.

defendant's Instagram messages was "street talk." Defendant argues that Detective Figurski's lay opinion regarding the meaning of these messages was based on speculation and invaded the province of the jury. We disagree. Explanation of the slang terms used in defendant's messages could have been helpful to the jury, or at least jurors unfamiliar with the terms, in determining whether the messages referred to the robbing and murdering of Lloyd. Moreover, Detective Figurski testified that his opinion on the terms used in the messages was based on his familiarity with them. Further, Detective Figurski did not offer an opinion regarding whether defendant was guilty or innocent; rather, he simply deciphered the slang terms used in the messages. Defendant was free to offer alternative definitions for the terms used, or otherwise argue the weight and credibility of the messages admitted into evidence. There is no evidence on the record that Detective Figurski impermissibly opined on the ultimate question of defendant's guilt or innocence. *Fomby*, 300 Mich App at 52.

Defendant's claims of prosecutorial error are without merit. Further, to the extent that defendant asserts that trial counsel's performance fell below an objective standard of reasonableness for failing to object to the alleged prosecutorial error, counsel is not ineffective for failing to advance a meritless position. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

## IV. AUTHENTICATION OF EVIDENCE

Defendant also argues that the trial court erred by admitting defendant's Instagram messages as obtained from Instagram[6] via a search warrant,[7] without first confirming their authenticity under the rules of evidence. We disagree.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

Defendant objected to the trial court's admission of the challenged Instagram messages on the basis that they were not properly authenticated; this issue is accordingly preserved for appellate review. *Aldrich*, 246 Mich App at 113, citing MRE 103(a)(1). However, defendant did not object to the admission of the messages on the grounds that they contained inadmissible hearsay; that issue is accordingly not preserved for appeal. *Id.*

We review for an abuse of discretion preserved challenges to the trial court's decision to admit evidence. *Hine*, 467 Mich at 250. The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or it makes an error of law. *Norfleet*, 317 Mich App at 654. We review unpreserved evidentiary errors for plain error affecting a defendant's substantial rights. *Allen*, 507 Mich at 604.

## B. ANALYSIS

---

[6] Instagram is a social medial and social networking service owned by Meta Platforms, Inc. For simplicity's sake, we will simply refer to the messages as being obtained from "Instagram."

[7] Some of the messages admitted into evidence were obtained from a search of defendant's cellular phone, rather than from Instagram; defendant does not object to the admission of those messages.

At the time of trial, MRE 901 provided, in pertinent part:

> **(a) General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

A trial court should only decline to admit evidence on authentication or identification grounds if the proponent's showing of authenticity is so tenuous that no reasonable juror could conclude that the evidence is what the proponent claims it to be. *People v Smith*, 336 Mich App 79, 107; 969 NW2d 548 (2021). Once evidence is sufficiently authenticated and admitted, it remains for the jury to determine the reliability and weight of the evidence, if any. *Id*. If a serious dispute arises regarding to whether evidence is genuine, the issue should be resolved by the jury, not the trial court. *Id*.

To the extent defendant claims that the Instagram messages were not properly authenticated before they were admitted, we disagree. The prosecution explained to the trial court that the messages had been obtained from Instagram via a police search warrant. The prosecution further specified that the Instagram messages were associated with the unique identification number of defendant's Instagram account, and that the identification number associated with the messages obtained from Instagram matched the identification number on the Instagram messages recovered from defendant's cell phone, which the parties had already agreed were authentic. Therefore, the trial court's determination that the messages' authenticity had been established was not an abuse of discretion.

Defendant also claims that the Instagram messages obtained directly from Instagram contained inadmissible hearsay. We disagree. At the time of trial, the rule against hearsay, MRE 802, provided that "[h]earsay is not admissible except as provided by these rules." At the time of trial, the rules of evidence also defined hearsay as a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801. Detective Figurski confirmed that the Instagram messages were introduced into evidence to establish defendant's knowledge of the shooting. Under MRE 801(d)(2),[8] these statements were not hearsay because they were offered against defendant

---

[8] At the time of trial, MRE 801(d)(2) provided, in pertinent part:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
>
> \* \* \*
>
> (2) *Admission by Party-Opponent*. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . .

and were his own statements. Defendant has not demonstrated plain error with respect to the court's determination to admit the challenged evidence.[9]

## V. LWOP SENTENCE

Defendant also argues that he is entitled to have his mandatory LWOP sentence for first-degree felony murder vacated and the case remanded for resentencing in light of our Supreme Court's decision in *People v Taylor*, ___ Mich ___, ___; ___ NW3d ____ (2025) (Docket Nos. 166428 and 166654); slip op at 2. The prosecution concedes that resentencing is required and, under the binding authority of *Taylor*, we agree.

In *People v Parks*, 510 Mich 225, 268; 987 NW2d 161 (2022), our Supreme Court held that "mandatorily subjecting 18-year-old defendants convicted of first-degree murder to a sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution, . . . and thus constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16." In *Taylor*, ___ Mich at ___; slip op at 2, our Supreme Court extended its holding in *Parks* "to offenders who were 19 or 20 years old when they committed the offense for which they were convicted." The Court in *Taylor* held that Const 1963, art 1, § 16 prohibits the imposition of a mandatory LWOP sentence "against this class of late adolescents without individualized sentencing." *Taylor*, ___ Mich at ___, slip op at 13. The Court in *Taylor*, ___ Mich at ___; slip op at 38, vacated the defendants' sentences in *Taylor* and its companion case, *People v Czarnecki*, and remanded to the circuit court for resentencing in accordance with MCL 769.25, its opinion in *Taylor*, and relevant Michigan Supreme Court caselaw. Accordingly, because defendant was 19 years old at the time of Lloyd's murder and received a mandatory LWOP sentence, under *Taylor* he is entitled to resentencing. Because we affirm defendant's conviction for felony murder, we accordingly vacate the LWOP sentence associated with that conviction and remand for further proceedings consistent with this opinion and our previous orders.

In his supplemental brief on appeal, defendant also argues that the prosecution cannot seek reimposition of an LWOP sentence because it failed to timely file a motion with the trial court under MCL 769.25. The trial court did not decide this issue in the first instance, but rather elected to wait to consider the issue until defendant's direct appeal was concluded. Because this Court is an error-correcting court, this issue is one that should first be decided by the trial court. *People v Blevins*, 314 Mich App 339, 352 n 5; 886 NW2d 456 (2016). Accordingly, we conclude that this issue is not ripe for appellate review, and we decline to address it.

## VI. CONCLUSION

We affirm defendant's convictions, vacate defendant's LWOP sentence for his first-degree

---

[9] Defendant also argues that the Instagram messages were not properly admitted under MRE 902(11). However, as stated, the evidence was properly admitted under MRE 901(a). Accordingly, the evidence did not need to satisfy the requirements of MRE 902(11).

murder conviction, and remand for resentencing and further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young